STATE v. GEORGE APPLEWHITE.

The general words of the Amnesty Acts of 1872 and 1874 include the band of outlaws, known as the "Lowery band."

The prisoner, who was a member of that band, was convicted and sentenced to be hung in 1870; while the cause was pending upon appeal in this Court, he made his escape. Upon the hearing of the appeal, this Court decided there was no error on the trial below; and in 1875, the prisoner was brought to the bar of the court below, and judgment was prayed in accordance with the decision of this Court. Thereupon the prisoner moved the court that he be discharged, upon the ground that he had been granted amnesty and pardon by the General Assembly: *Held,* that the effect of the appeal was to vacate the sentence pronounced in 1870; and that the decision of this Court was not a sentence or judgment, but simply an order to the court below to proceed to sentence and judgment; and that therefore the prisoner was entitled to his discharge.

INDICTMENT for *Murder,* tried before McKAY, J., at Fall Term, 1875, of COLUMBUS Superior Court.

The case was before this Court at June Term, 1870, and is reported in 64 N. C. Rep.

At Fall Term, 1875, in pursuance of the decision of this Court, the prisoner was again brought to the bar of the

Court and the Solicitor prayed the judgment of the Court. Upon being asked by the Court what he had to say why sentence of death should not be pronounced against him, the prisoner, through his counsel, answered that amnesty and pardon had been granted him by an Act of the General Assembly of North Car. lina, ratified the 8th day of December, 1874, and prayed the Court that he might be discharged. The Court refused the motion, and the prisoner appealed.

*Attorney General Hargrove*, for the State.
*W. F. French*, for the prisoner.

PEARSON, C. J.   The objection that it does not appear by the transcript, sent to this Court, that the prisoner was a member of the "Lowery band," which had been notorious for outrages committed in the County of Robeson, or that the prisoner is the same individual who was convicted in 1870, upon an indictment against him and others of said band for the murder of Reuben King, is met by the statement of the Hon. Daniel L. Russell, (who presided as Judge at the trial,) which the Attorney General, with the approval of this Court, consents may be filed as a part of the case.

It is clear the general words of the Amnesty Acts of 1872 and 1874, include the Lowery band; if there could have been any doubt about it, the exclusion of "Stephen Lowery," one of the band, from the benefit of the amnesty in the Act of 1874, leaves no room for doubt.

The prisoner being at the bar for sentence, prayed the benefit of the "Amnesty Act," and asked to be discharged. His Honor refused to discharge him.

As a general rule, it is in bad taste for a Judge of the Superior Court to encumber the record with an argument in support of his opinion, but sometimes, especially in a "criminal action," when prisoners are not able to procure the aid

.of counsel before this Court, it is desirable that his Honor should set out briefly the ground on which he puts his decision.

We are left to conjecture that his Honor put his decision upon the ground that the prisoner was "under sentence," and was consequently not embraced by the words of the Act of 1874. The prisoner was convicted and sentenced to be hung in 1870. He appealed to the Supreme Court. That Court decided in 1870 there is no error, and ordered its decision to be certified to the Superior Court, to the end that further proceedings should be had agreeable to law. In the meantime the prisoner had made his escape, and no further proceedings could be had until he was brought up to receive sentence in 1875.

The effect of his appeal was to vacate the sentence pronounced upon him in 1870. The effect of the decision of the Supreme Court was not a judgment or sentence, but simply an order to the Court below "to proceed to judgment and sentence agreeable to this decision and the laws of the State." Rev. Code, chap. 33, sec. 6, proviso.

That enactment makes a marked distinction between the action of the Supreme Court in civil and criminal cases. C. C. P. modifies the effect of an appeal in civil actions, but has no reference to an appeal in criminal actions. So the appeal vacated the sentence. The Supreme Court decided there is no error, and directed its decision to be certified to the end that the Superior Court should proceed agreeable to law, and pronounce sentence. Until such action was taken by the Superior Court, the prisoner was not "under sentence." That the judgment or sentence is vacated by the appeal, and that the prisoner is subjected to punishment by the judgment or sentence pronounced after the decision of the Supreme Court is certified, has been taken to be the law ever since "the Court of Conference" was abolished.

We can hardly suppose his Honor applied the maxim, "No one shall have advantage of his own wrong." For although the escape of the prisoner prevented sentence from being pronounced against him "agreeable to the decision of the Supreme Court and the laws of the State," at the regular term, still it was only a question of time, provided he was afterwards arrested. We are unable to see any ground upon which the General Assembly may not, in its wisdom, grant amnesty to every criminal. We are of opinion that the Act relied on in the plea, is a bar to the further prosecution of this criminal action. For, if we suppose it to be a fact, and if we admit such a fact could be noticed by the Court, that the members of the Legislature who voted for the Amnesty Act, December, 1874, while excepting "Stephen Lowery," omitted to name the prisoner one of his fellows, because of the general impression that after his escape he had been killed, this mistake or omission cannot be corrected by the action of a co-ordinate branch of the government.

A Court of Equity may require a deed to be re-executed on the ground of ignorance or mistake, but the judiciary has no power of that kind in respect to an act of the General Assembly. So the prisoner can avail himself of the general words of the statute.

There is error. Let this opinion be certified to the end, &c.

By our decision the prisoner will at the next term of the Superior Court as of course be discharged, and the question is, for what purpose is the County to be subjected to the costs of his jail fees, and why should he be subjected to imprisonment any longer?

Upon consideration of this subject, we are of opinion that the case is provided for by the *habeas corpus* act. Battle's Revisal, chap. 54, sec. 10.

Let a writ of *habeas corpus* issue to have the body of the prisoner before us forthwith, so that the cause of his imprisonment may be enquired into.

PER CURIAM.                    Judgment accordingly.