In the Matter of WILLIAM F. DOYLE, Appellant. SAMUEL H. HOFSTADER et al., Constituting a Legislative Committee, Respondents.

246

(Argued July 31, 1931; decided August 10, 1931.)

*Ilo Orleans* and *Samuel Falk* for appellant. The witness justifiably refused to answer the question put to

him by the joint legislative committee. The privilege against self-incrimination means that no witness in any place or at any time may be compelled to answer any question which in his honest judgment might tend to incriminate him or lead to the disclosure or discovery of evidence or a clue to evidence which might tend to incriminate him. (*Counselman* v. *Hitchcock*, 142 U. S. 547; *People ex rel. Taylor* v. *Forbes*, 143 N. Y. 219; *People ex rel. Lewisohn* v. *O'Brien*, 176 N. Y. 253; *People ex rel. Ferguson* v. *Reardon*, 197 N. Y. 236; *Travelers Ins. Co.* v. *Mulligan*, 231 App. Div. 222; *People* v. *Hackley*, 24 N. Y. 74; *Burr's Trial*, 1 Burr's Trial, 244; *People* v. *Anhut*, 162 App. Div. 517; 213 N. Y. 643.) Section 381 of the Penal Law is unconstitutional as being in contravention of article XIII, sections 2 and 3, of the Constitution of the State of New York. (*People* v. *Anhut*, 162 App. Div. 517; *People* v. *Sharp*, 107 N. Y. 427; *People* v. *Hackley*, 24 N. Y. 74.) Section 381 of the Penal Law is insufficient as an immunity statute. (*Counselman* v. *Hitchcock*, 142 U. S. 547; *People ex rel. Lewisohn* v. *O'Brien*, 176 N. Y. 253; *Matter of Emery*, 107 Mass. 172; *People* v. *Sharp*, 107 N. Y. 427.) The peril to the witness is real. (*Matter of Doyle*, 42 Fed. Rep. [2d] 686; *People* v. *Bryant*, 114 Misc. Rep. 133; *Jack* v. *Kansas*, 199 U. S. 372.) A grant of immunity can only be effected through a statute which must be enacted in the manner prescribed by the Constitution. (Opinions. of Attorney-General, 1921, p. 424; *People* v. *Bowen*, 21 N. Y. 517.) A joint resolution of the Legislature is not a statute. (*People ex rel. Argus Co.* v. *Palmer*, 12 Misc. Rep. 392; 146 N. Y. 406; *Matter of Leach*, 115 Misc. Rep. 660; 197 App. Div. 702; 232 N. Y. 600.)

*Samuel Seabury, George Trosk, Harland B. Tibbetts* and *Sidney Handler* for respondents. The questions addressed to the witness were legal and pertinent.

(*People* v. *Sharp*, 107 N. Y. 428; *McDonald* v. *Keeler*, 99 N. Y. 463; *Interstate Commerce Comm.* v. *Baird*, 194 U. S. 25.) The refusal of the witness to answer the questions propounded to him was without reasonable cause. (*Jack* v. *Kansas*, 199 U. S. 372; *Dunham* v. *Ottinger*, 243 N. Y. 423; *United States ex rel. Vajtauer* v. *Commissioner of Immigration*, 273 U. S. 113; *Mason* v. *United States*, 244 U. S. 262; *Reg.* v. *Boyes*, 1 Best & S. 311; *People ex rel. Lewisohn* v. *O'Brien*, 176 N. Y. 253.) If the witness testifies to the division of money under circumstances which make the act a bribe, then, by his testimony, he is endowed with complete immunity by virtue of section 381 of the Penal Law. (*Matter of Sharp*, 107 N. Y. 427; *People ex rel. Lewisohn* v. *O'Brien*, 176 N. Y. 253; *Counselman* v. *Hitchcock*, 142 U. S. 547.) A person may be required to testify against himself in a criminal case provided the Legislature has declared that he may not be prosecuted for any transaction disclosed by his testimony. (*People* v. *Sharp*, 107 N. Y. 427; *People ex rel. Lewisohn* v. *General Sessions*, 96 App. Div. 201; 179 N. Y. 594; *Matter of Rouss*, 221 N. Y. 81; *Brown* v. *Walker*, 161 U. S. 591; *Matter of Anhut*, 162 App. Div. 517; *People ex rel. Williams* v. *Dayton*, 55 N. Y. 367; *People* v. *Learned*, 5 Hun, 626.) No claim of incrimination is tenable with respect to a crime for which the prosecution is barred by the Statute of Limitations. (*Hale* v. *Henkel*, 201 U. S. 43; *Brown* v. *Walker*, 161 U. S. 591; *People ex rel. Lewisohn* v. *General Sessions*, 96 App. Div. 201; 179 N. Y. 594; *Matter of Rouss*, 221 N. Y. 81; *Matter of Cappeau*, 198 App. Div. 357.) Under section 584 of the Penal Law the witness is immune from prosecution for conspiracy. (*People* v. *Sharp*, 107 N. Y. 427.) The resolution of the joint legislative committee, granting the witness complete immunity, is valid and effective, and guarantees him against prosecution for any matter concerning which he may testify. (*McDonald* v. *Keeler*, 99 N. Y. 463;

*People* v. *Sharp*, 107 N. Y. 427; *People* v. *Learned*, 5 Hun, 626; *People* v. *Dayton*, 55 N. Y. 367; *Leggett* v. *Hunter*, 19 N. Y. 445; *People* v. *Learned*, 5 Hun, 626. *Matter of Parker*, 74 S. C. 466; *Sullivan* v. *Hill*, 73 W. Va. 49; *Matter of Youngblood* v. *State*, 94 Tex. Cr. Rep. 330; *Matter of Davis*, 58 Kan. 368; *Jack* v. *Kansas*, 199 U. S. 372; *Matter of Irvine*, 74 Fed. Rep. 954; *United States* v. *McCarthy*, 18 Fed. Rep. 87; *People ex rel. Lewisohn* v. *O'Brien*, 176 N. Y. 253; *Mason* v. *United States*, 244 U. S. 362.)

CARDOZO, Ch. J. By a joint resolution of the Senate and the Assembly of the State of New York, adopted March 23, 1931, it was resolved that a joint legislative committee be constituted to investigate the administration and conduct of the various departments of the city of New York.

The appellant, William F. Doyle, was subpœnaed to attend before the committee, and upon appearing was directed to answer a series of questions relating to his practice before the Board of Standards and Appeals. There had been preliminary testimony from the lips of other witnesses that fees of extraordinary magnitude had been paid for his services during a period of years. The questions put to the appellant were designed to inform the committee whether he had divided these fees with a political leader, or with some one else, in furtherance of a concerted plan of bribery and corruption, and whether he had paid any part of them as a bribe to any public officer.

The appellant has been adjudged in contempt, first by a majority of the joint legislative committee, and then by the Supreme Court, for his refusal to answer the questions propounded. Typical questions are these: " Question: When you practiced before this board, did you split your fees? Answer: Do you mean with the Board of Standards and Appeals? Question: I mean did

you split them with anybody? Answer: I never split a nickel with the Board of Standards and Appeals. Question: I asked you whether you split them with anybody, whether they were on the Board of Standards and Appeals or whether they were not? Answer: I refuse to answer on the ground that it might tend to incriminate me." Again, " Question: Dr. Doyle, did you, in reference to cases pending before the Board of Standards and Appeals, bribe any public official? Answer: You are alluding to the Board of Standards and Appeals? No. Question: Now you did not bribe any member of the Board of Standards and Appeals? Answer: No. Question: Did you bribe any other public official? Answer: I refuse to answer on the ground that it might tend to incriminate me. Question: Did you give any of the proceeds of those fees to any political leader in the County of New York? Answer: I refuse to answer that question on the ground that answering might tend to incriminate me."

We are to determine whether the refusal was contumacious or privileged.

The Constitution of the State provides that no person " shall be compelled in any criminal case to be a witness against himself " (Const. art. I, § 6).

The privilege may not be violated because in a particular case its restraints are inconvenient or because the supposed malefactor may be a subject of public execration or because the disclosure of his wrongdoing will promote the public weal.

It is a barrier interposed between the individual and the power of the government, a barrier interposed by the sovereign people of the State; and neither legislators nor judges are free to overleap it.

The appellant is, therefore, privileged to refuse to answer questions that may tend to implicate him in a crime, unless by some act of amnesty or indemnity, or some valid resolution equivalent thereto, he has been relieved from the risk of prosecution for any felony

or misdemeanor that his testimony may reveal. The immunity is not adequate if it does no more than assure him that the testimony coming from his lips will not be read in evidence against him upon a criminal prosecution. The clues thereby developed may still supply the links whereby a chain of guilt can be forged from the testimony of others. To force disclosure from unwilling lips, · the immunity must be so broad that the risk of prosecution · is ended altogether (*People ex rel. Lewisohn* v. *O'Brien*, 176 N. Y. 253; *Counselman* v. *Hitchcock*, 142 U. S. 547; *Heike* v. *United States*, 227 U. S. 131, 142).

The respondent insists that immunity co-extensive with the requirements of this rule has been assured to the appellant by statute and resolution: by section 381 of the Penal Law as to the completed crime of bribery; by section 584 of the Penal Law as to the crime of conspiracy; and as to any and all crimes by the joint resolution of the two houses of the Legislature.

■ Penal Law, section 381, provides as follows: " A person offending against any provision of any section of this chapter relating to bribery and corruption, is a competent witness against another person so offending, and may be compelled to attend and testify upon any trial, hearing, proceeding, or investigation, in the same manner as any other person. But the testimony so given shall not be used in any prosecution or proceeding, civil or criminal, against the person so testifying. A person so testifying to the giving of a bribe *which has been accepted*, shall not thereafter be liable to indictment, prosecution, or punishment for that bribery, and may plead or prove the giving of testimony accordingly, in bar of such an indictment or prosecution."

An argument is · made for the appellant that the immunity created by this section is in contravention of restrictions established by the Constitution of the State. The Constitution (Art. XIII, § 3) authorizes the exemption of the briber who testifies to the giving or offering

of a bribe on the "prosecution" of a public officer for accepting it. The statute gives a like exemption to one who testifies to a like effect on "any trial, hearing, proceeding, or investigation." There is no denial by counsel for the committee that the immunity thus recognized is broader than the one that would be conferred by the Constitution if the statute were not here, since it extends to a legislative investigation designed, not to prosecute for crime, but to gather information for legislation in the future. The expansion may be conceded, and the validity of the statute will suffer no impairment. The purpose of the Constitution was to establish one immunity permanently in the fundamental law, but not to foreclose the Legislature from establishing additional ones thereafter. So the path was pointed in 1887 by the judgment in the leading case of *People* v. *Sharp* (107 N. Y. 427). What was said and assumed in that case has been confirmed by years of acquiescence too many and too uniform to permit us to disturb it now upon any nicely balanced arguments.

Section 381 of the Penal Law is thus a valid statute, to be accepted at its face value. Whatever immunity it purports to give is the safe and sure possession of any witness who invokes it after being brought within its terms. But the immunity that it purports to give is limited and narrow. The witness is relieved of the risk of prosecution in one situation and one only: he must have testified to the offer or giving of a bribe which has been accepted (*People* v. *Anhut*, 162 App. Div. 517; 213 N. Y. 643). If there has been a conspiracy to bribe without evidence of acceptance, the supposed exemption fails. If there has been an offer without acceptance, it fails again. The purpose of this section of the statute, following in that respect the purpose of the Constitution (Art. XIII, § 3), is to reach the bribe-taker as the chief delinquent, and let the briber go if thereby the taker can be held. There is no token of a purpose that a like

immunity shall follow when there has been a mere conspiracy to corrupt, or an offer of a bribe which has been rejected by the officer to whom the tender has been made. Immunity from prosecution for conspiracy or for an attempt not followed by acceptance must find some other basis, if immunity there is. The counsel for the committee, if we understand his argument aright, makes no contention to the contrary. Seeking another basis for immunity, he has found one, he believes, in another section of the same statute (Penal Law, § 584), in respect of any prosecution for a criminal conspiracy. He concedes that there is none against a prosecution for an attempt to bribe apart from a conspiracy, but the risk of such a prosecution he believes to be remote and unsubstantial (*Mason* v. *United States*, 244 U. S. 362).

■ We pass then to the question of the immunity offered to the witness against a prosecution for conspiracy.

The risk of such a prosecution is a real one unless a statute has removed it. Let us suppose that there is testimony by the witness that he split his fees with a political leader, or some one other than a public officer. Let us suppose that he did this under an agreement that the sharer of the fees would control by influence or by the payment of money the decisions of the Board of Standards and Appeals. Let us suppose further that there is no evidence establishing the acceptance of the money by any member of the Board or any one connected with it, no tracing of the bribe into the hands of any one invested with the functions of an office. Prosecution of a public officer for the crime of bribery or corruption will be impossible in such conditions. What *will* be possible will be a prosecution of the witness and his confederates for the crime of conspiracy to corrupt, or conceivably for an attempt to bribe. The risk that the prosecution will take the first of these forms is not remote or unsubstantial. We know from recent records of criminal trials that men charged with paying or receiv-

ing money as an inducement to official action have not been prosecuted for the completed crime of bribery or corruption, which would have been difficult to prove; they have been tried for conspiracy (cf. *People* v. *Connolly*, 253 N. Y. 330). The prosecutor may wish to make a like election here. If that shall be his choice, will section 584 of the Penal Law stand in the way of putting the choice into effect?

The section reads as follows: " No person shall be excused from attending and testifying, or producing any books, papers or other documents before any court, magistrate, or referee, upon any investigation, proceeding or trial, for a violation of any of the provisions of this article, upon the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to convict him of a crime or to subject him to a penalty or for forfeiture; but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may so testify or produce evidence, documentary or otherwise, and no testimony so given or produced shall be received against him upon any criminal investigation, proceeding or trial."

The statute is not adequate to relieve the witness of his peril. It is limited to an investigation, proceeding or trial before a " court, magistrate or referee," and to such an investigation conducted for a violation of the " provisions of this article," *i. e.*, the article relating to conspiracy. It is very different from the statute considered in the *Sharp* case (Penal Code, § 79, now Penal Law, § 381; *People* v. *Sharp*, 107 N. Y. 427, 451, 454), which though narrow in the range of the immunity conferred did not attempt to distinguish between an investigation for one purpose and an investigation for another. The immunity was to be the same whether the hearing was before a committee in aid of future legislation or before a judge or a referee for the punishment of crime.

Very likely the Legislature would have been willing to broaden the immunity under section 584 by a similar extension if its thought had been directed to a legislative inquiry. We must take the statute as we find it.

If doubt as to its meaning could survive the mere reading of its terms, the history of its enactment would cause the doubt to be dispelled. Section 584 came into the Penal Law in 1910 by the enactment of chapter 395 of the Laws of 1910. The General Business Law (Cons. Laws, ch. 20)· already contained a provision prohibiting monopolies and ·authorizing an investigation before a judge or referee in aid of their suppression (Gen. Bus. Law, §§ 340, 344; cf. Laws of 1899, ch. 690, § 6; Laws of 1897, ch. 383, § 7). On the same day that section 584 was added to the Penal Law, the Legislature amended the General Business Law by incorporating in it the grant of an immunity in precisely the same form (Gen. Bus. Law, § 345, as amd. by Laws of 1910, ch. 394). This explains the mention of a referee in each of the two statutes. A witness testifying before a referee appointed under the General Business Law (the so-called Donnelly act) might be indicted (if he was not immune) either for violation of the provisions of that act, or (if the unlawful monopoly was the act of two or more) for the violation of article 54 of the Penal Law, which denounces as a crime a conspiracy to " commit any act injurious  *  *  *  to trade or commerce " (Penal Law, § 580, subd. 6). To make the immunity secure, the two statutes were thus adopted on the same day, one amending section 345 of the General Business Law and the other in the same words amending the Penal Law by adding section 584 thereto. Obviously, the Legislature when it amended the General Business Law by giving immunity to a witness testifying " before any court, magistrate or referee, upon any investigation, proceeding or trial, pursuant to or for a violation of any of the provisions of this article," had in view, not a hearing before a legislative committee to gather infor-

mation for future legislation, but a hearing before an officer of one of the enumerated classes — a court, magistrate or referee — acting pursuant to the statute for the suppression of monopolies. Obviously too, it had a like thought when it conferred a like immunity upon witnesses testifying before the same officers and disclosing by their testimony, not merely a monopoly, but a criminal conspiracy (cf. the later amendments to the General Business Law by the so-called Martin act; Gen. Bus. Law, § 359).

We think the conclusion is inescapable that the witness, if compelled to testify as to any act or agreement not amounting to the completed crime of bribery, will be subject to indictment for conspiracy, and that section 584 of the statute will not render him immune.

The suggestion is not ignored that conspiracy is a misdemeanor, not a felony, and that some of the inquiries have relation to acts or agreements more than two years old, as to which the Statute of Limitations may constitute a bar. A statute of limitations is equivalent to an act of amnesty when the crime erased by lapse of time is one standing by itself, and is not a clue to the commission of other crimes thereafter (*Brown* v. *Walker*, 161 U. S. 591, 598; 4 Wigmore on Evidence, § 2279). Clearly it is no such equivalent when the crime is a continuing conspiracy, unaffected by any limitation till the combination is abandoned (*United States* v. *Kissel*, 218 U. S. 601).

A witness is not required to show, in order to make his privilege available, that the testimony which he declines to give is certain to subject him to prosecution, or that it will prove the whole crime, unaided by testimony from others. It is enough, to wake the privilege into life, that there is a reasonable possibility of prosecution, and that the testimony, though falling short of proving the crime in its entirety, will prove some part or feature of it, will *tend* to a conviction when combined with proof of other circumstances which others may supply.

The privilege is not removed if there are loopholes in

the tender of immunity through which a prosecutor can cut a way to indictment and conviction. The immunity must be as broad as the privilege destroyed.

What has been said as to the risks to which the witness is subjected applies to those questions and those only that are directed to a corrupt agreement between the witness and a confederate not occupying a public office, or to an agreement between the witness and an officer not affecting official action, or not consummated thereafter by payment of the bribe. Inquiry as to a consummated bribery stands upon a different footing. The witness may be compelled to state whether payments for corrupt purposes affecting official action were accepted by an officer, for in making proof of the acceptance he brings himself automatically within the indemnity secured by Penal Law, section 381, to one who testifies to a bribe which has been offered and accepted. There was, therefore, contempt of the committee when the witness after stating that he had never bribed any member of the Board of Standards and Appeals, declined to answer this question: " Did you bribe any other public official? " If the bribe is admitted, all the circumstances attending it may thereupon be explored, the name of the officer, the purpose of the payment, and the particulars of time and place.

■ The effect of the joint resolution of the two houses of the Legislature is still to be considered.

By the terms of the joint resolution creating the legislative committee, the Legislature has said: " Whenever in its judgment the public interest demands, the committee may determine that a person shall not be excused from attending and testifying before said committee * * * on the ground that the testimony * * * required of him may tend to incriminate him or to subject him to a penalty or forfeiture; but no person so attending and testifying * * * who has duly claimed excuse or privilege, which would be sufficient except for this pro-

vision of this resolution and which said excuse or privilege has been expressly denied by the committee, shall be subject to prosecution or to any penalty or forfeiture for or on account of the transaction, matter or thing concerning which he may as aforesaid testify   *   *   *   in obedience. to its subpœna."

This resolution, if valid, is in effect an act of amnesty. It wipes out as to the witness whose claim of privilege has been denied the criminal statutes of the State with all their pains and penalties, and, like a pardon, makes him a new man.   A pardon may be granted by the Governor after conviction of the crime (Const. art. IV, § 5).   An act of amnesty may be passed, like any other bill, by the Legislature, acting separately in its two houses (Art. III, § 15), with the approval of the Governor, or in the event of his veto, by a two-thirds vote thereafter (Art. IV, § 9).   "Every bill which shall have passed the Senate and Assembly shall, before it becomes a law, be presented to the Governor; if he approve, he shall sign it; but if not, he shall return it with his objections to the house in which it shall have originated " (Const. art. IV, § 9).   This resolution was never presented to the Governor.   It never received his approval or his veto. It is not an act of amnesty; it is not an " act " at all (*People ex rel. Argus Co.* v. *Palmer,* 12 Misc. Rep. 392; 146 N. Y. 406).

There are precedents in the books for what is sometimes styled a legislative pardon.   If they are scrutinized, they will be found in every instance to have been statutes in the usual form.   They were acts of amnesty or indemnity adopted by the Legislature with the Governor's approval (*United States* v. *Hughes,* 175 Fed. Rep. 238; *United States* v. *Hall,* 53 Fed. Rep. 352; *State ex rel. Anheuser-Busch Brewing Assn.* v. *Eby,* 170 Mo. 497; *State* v. *Applewhite,* 75 N. C. 229; cf. *Brown* v. *Walker,* 161 U. S. 591, 601; *Matter of Garland,* 4 Wall. [U. S.] 333; 4 Wigmore on Evidence, § 2281, and statutes and cases there

collated). Never has it been held that a Legislature alone may suspend the criminal law as to a person or a class of persons. In the constitution of that country from whose polity our own institutions derive to a large extent their origin and meaning, the rule is said to be that a resolution of the House of Commons is invalid and of no effect if in conflict with existing law (Anson, Law and Custom of the Constitution, vol. 1, pp. 182, 185, 186, 192). We cannot bring ourselves to believe that the efficacy of resolutions is any greater in New York.

The argument is made that a legislative body has inherent power to conduct an investigation for the discovery of abuses in the operations of government (*People ex rel. Karlin* v. *Culkin,* 248 N. Y. 465, 478; *People ex rel. McDonald* v. *Keeler,* 99 N. Y. 463; *McGrain* v. *Daugherty,* 273 U. S. 135; *Sinclair* v. *United States,* 279 U. S. 263; Landis, Constitutional Limitations on the Congressional Power of Investigation, 40 Harvard Law Review, 153), and that the power to give immunity to witnesses and to suspend to that extent the general laws of the State, must be deemed to be a necessary incident of the power to investigate. But it is not such an incident. It may at times be a useful incident, but it is not a necessary one, necessary that is to say, in the sense of being a power so indispensable to the ordinary exercise of the investigating function that it must be taken as implied. Modern scholarship has traced back for centuries the capacity of a legislative body to equip itself for the task of legislation by discovery of the facts (Landis, *supra*). If the power to suspend the laws in furtherance of the inquiry inheres in the inquirer without the aid of any statute, we can only regard it as extraordinary that so many investigations have been able to proceed without an attempt to use it. The parliamentary practice in Great Britain will be referred to later on. For the moment we confine ourselves to the practice in the United States. There is no record in the books of even a

single instance, or none in any event has been brought to our attention, in which a witness, claiming privilege, has been compelled to reveal a crime upon the basis of an inherent power in the inquirer to relieve him from its consequences. Many fruitful inquiries have been prosecuted without the hint of such a power in the organic resolution; we may instance the Armstrong investigation of 1905, with the report as to the business of insurance which was the outcome of its labors (See concurrent resolution of July 20, 1905, printed in N. Y. Assembly Journal, 1905, p. 1210, and N. Y. Senate Journal, 1905, p. 1126). In the few instances, none of very distant date, in which a power to confer immunity has been recited in the resolution appointing the committee, there is no record of its use. Nor may we stop with Senate and Assembly if implication once begins. The power to suspend the laws, if attributed to these, must belong to others too. Local legislative bodies, such as boards of aldermen, have implied or inherent power to conduct investigations as to matters of local government (*Briggs* v. *Mackellar*, 2 Abb. Pr. 30; *People ex rel. Karlin* v. *Culkin, supra*). No one would be likely to assert that they have also the inherent power to give their witnesses immunity against the enforcement of the criminal law. The grand jury is an investigating body, but it has no power to pledge immunity to a witness who declines to answer (cf. Penal Law, § 2446). So is the Appellate Division when prosecuting an inquiry as to members of the bar or judges of the inferior courts. Even the Governor is at times an inquisitorial officer, as when examining in person or by deputy into the conduct of other officers or the administration of departments (*Matter of Richardson*, 247 N. Y. 401). If he is competent when so acting to give immunity to witnesses, the power must have its origin in the provisions of a statute.

The conclusion, we think, is inescapable that a power to suspend the criminal law by the tender of immunity

is not an implied or inherent incident of a power to investigate. It may be necessary for fruitful results in a particular instance, but it is not so generally indispensable as to attach itself automatically to the mere power to inquire. Whether the good to be attained by procuring the testimony of criminals is greater or less than the evil to be wrought by exempting them forever from prosecution for their crimes is a question of high policy as to which the law-making department of the government is entitled to be heard. In the State of New York that department is not the Legislature alone, but the Legislature and the Governor, the one as much as the other an essential factor in the process (*People* v. *Bowen,* 21 N. Y. 517, 519, 521; *Matter of City of Long Beach* v. *Pub. Serv. Comm.,* 249 N. Y. 480, 489, 490). We beg the question when we argue that the Legislature may give immunity because the Legislature is the sole custodian of the legislative power. It is not the sole custodian of that power. The power is divided between the Legislature and the Governor (cf. *Davis* v. *Ohio,* 241 U. S. 565; *Hawke* v. *Smith,* 253 U. S. 221). Article III, section 1, of the Constitution must be read in conjunction with article IV, section 9 (*People* v. *Bowen, supra; Matter of City of Long Beach* v. *Pub. Serv. Comm., supra*). The Legislature can initiate, but without the action of the Governor it is powerless to complete. Not only do we beg the question when we infer the validity of the immunity from the possession by the Legislature of the full legislative power; we concede by implication that unless the legislative power has been thus committed without division, the immunity must fail. The argument, reduced to that basis, is seen to be self-destructive. The grant of an immunity *is* in very truth the assumption of a legislative power, and that is why the Legislature acting alone is incompetent to declare it. It is the assumption of a power to annul as to individuals or classes the statutory law of crimes, to stem the course of justice, to absolve the grand jurors of the

county from the performance of their duties, and the prosecuting officer from his. All these changes may be wrought through the enactment of a statute. They may be wrought in no other way while the legislative structure of our government continues what it is.

The argument is made that the jurisdiction to grant immunity is an incident of the jurisdiction to punish for contempt. It is no more such an incident for a committee of the Legislature (Legislative Law; Cons. Laws, ch. 32, § 4, subd. 5; *Kilbourn* v. *Thompson*, 103 U. S. 168; *People ex rel. McDonald* v. *Keeler*, 99 N. Y. 463; *Matter of Barnes*, 204 N. Y. 108; *Sinclair* v. *United States*, 279 U. S. 263; Landis, op. cit., pp. 153, 219) than it is for a court or judge. The punishment for contempt may be imposed for disobedience of a lawful mandate. The power thus to punish may not be used as an excuse for the issue of an unlawful mandate and the remission of the pains and penalties of crimes in consideration of obedience.

We are reminded that on three other occasions, once in 1894 and twice in 1921, resolutions in like form were adopted in the grant of authority to other investigating committees. The existence of these resolutions is put before us as evidence of a practical construction. Little significance belongs to them in view of the fact that there is no evidence of an attempt to enforce them against the protest of a witness (*People* v. *Tremaine*, 252 N. Y. 27, 46, 47). Whatever significance they might otherwise have is destroyed by the fact that in 1921 the Attorney-General of the State gave an opinion to the effect that the Legislature was without power to bestow immunity upon a witness through the form of a resolution, and to suspend, in so doing, the operation of the criminal law (Opinions of Attorney-General, 1921, p. 424). A practical interpretation of the Constitution sufficient to change the course of the legislative process must find a broader basis.*

---

*For a cloud of instances in which statutes were enacted, see 4 Wigmore on Evidence, § 2281.

The subject is not clarified by reference to the practice of the Congress, whatever it may be. Under the Federal Constitution, "every Order, Resolution or Vote to which the concurrence of the Senate and House of Representatives may be necessary (except on a question of adjournment)" must be submitted to the President for approval or veto in the same manner as a Bill (U. S. Const. art. I, § 7, subd. 3; cf. Hinds, Precedents of the House of Representatives, vol. 4, §§ 3483, 3484). A resolution so approved has all the authority of a statute.

We have postponed to this stage the consideration of an argument that is drawn from the practice of the British Parliament.

The practice, instead of tending to give support to the validity of a resolution obliterating guilt, tends directly the other way.

The privilege against self-incrimination in so far as it exists in England does not derive its sanction from a written constitution, and is not binding upon the Houses of Parliament in a parliamentary inquiry. The privilege in New York applies to an investigation by a Legislature as fully as to a trial in court (*People* v. *Hackley*, 24 N. Y. 74; *People* v. *Sharp, supra; Sinclair* v. *United States, supra*). The House of Lords does not compel an answer unless complete immunity is given. The House of Commons at times has been satisfied with less.

There is, however, an established practice whereby the members of the House of Commons, its officers, and shorthand writers are prohibited from making public in a court of justice or otherwise any testimony brought out upon a parliamentary inquiry without special leave of the house, which according to usage is not given if the testimony will expose to prosecution for a crime (Cushing, Law & Practice of Legislative Assemblies, §§ 983, 1001, 1002, 1004; Hansard, Parliamentary Debates, 2d series, p. 970; cf. 2 Redlich, The Procedure of the House of Commons, p. 193).

None the less, in the event that the testimony is published, whether in violation of the mandate of the house or not, the prosecuting authorities are free to prosecute the offender for the crime thereby revealed (Cushing, *supra*, § 1004).

In other words, the prohibition, even in respect of disclosure by members of the house or persons in its service, is limited to the use as a confession of the very testimony given by the witness in the course of the inquiry, and does not relieve him from prosecution for the crime if a case can be proved without the use of the confession, though by following up its clues (Cushing, *supra*, § 1005; Hansard, *supra*, vol. 23, pp. 1190, 1191, 1197, 1198).

For this there is need of an act of indemnity which requires the concurrence of both houses and the approval of the Crown (Cushing, *supra*, § 1005; Hansard, *supra*, vol. 23, p. 1190 *et seq.*).

Accordingly we hear of a case in the year 1742 where in consequence of the refusal of witnesses to testify before a select committee to inquire into the conduct of the Earl of Oxford, the House of Commons found it necessary to pass a bill to indemnify such witnesses as should testify truly before the committee, but the bill was rejected by the Lords (Cushing, *supra*, § 1005, note).

Nearly a century later in the debate on the East Retford Witnesses bill, the Marquis of Salisbury referred in his speech to the precedents in Shoreham's case (1771 and 1782), and in other cases where an act of indemnity had been passed to make the immunity complete (Hansard, *supra*, vol. 23, p. 1190 *et seq.*).

The parliamentary precedents are thus of no avail to sustain the resolution in a State where the privilege of silence is created by the Constitution, and is satisfied by nothing less than obliteration of the crime (*Counselman* v. *Hitchcock, supra; People ex rel. Lewisohn* v. *O'Brien, supra*).

Far from sustaining the resolution, they show that in Great Britain the self-same question has arisen, and that the power of a House of Parliament has been limited to a restraint upon the disclosure of the testimony by members of the house or by others in its service, and has never been extended to the grant of an immunity co-extensive with the risk.

We do well to remember in weighing the significance of the English practice that publication of the proceedings of either of the Houses of Parliament, publication even of the debates, is a breach of privilege and a contempt unless the publication is by permission, tacit or express (21 Halsbury, Laws of England, Parliament, § 1472; Redlich, Procedure of the House of Commons, vol. 2, pp. 36–38; Lowell, The Government of England, vol. 1, pp. 243, 244).

Nowhere in the United States does such a privilege exist.

A final argument is made that the risk of prosecution is unreal and unsubstantial, since it is not to be supposed that a District Attorney would prosecute a witness in the face of a solemn declaration of the will of two houses of the Legislature that the witness should go free. This argument ignores the provisions of article XIII, section 6, of the Constitution that " any district attorney who shall fail faithfully to prosecute a person charged with the violation in his county of any provision of this article which may come to his knowledge, shall be removed from office by the Governor, after due notice and an opportunity of being heard in his defense."

The witness is within his privilege in insisting that the basis for his immunity shall be something more substantial than the grace or favor of the prosecutor who may bring him to the bar of justice (Code Crim. Proc. §§ 671, 673; *The Whisky Cases*, 99 U. S. 594; *Temple* v. *Commonwealth*, 75 Va. 892, 897; *Matter of Irvine*, 74 Fed. Rep. 945, 964, per TAFT, J.). To uphold a finding

that his conduct amounted to a contempt it must appear that in refusing to answer he was violating a legal, and not merely a moral obligation. The immunity like the obligation must have its source and sanction in the law. An " equitable right to * * * clemency " (*The Whisky Cases, supra*, p. 606) — a mere " gesture " of benevolence — is not a substitute for protection against indictment and conviction. Clemency may be refused and even if ultimately granted, must be postponed until conviction, the accused being subjected in the meantime to arrest and imprisonment. The King, like the President of the United States (*Brown* v. *Walker*, 161 U. S. at p. 601), is free to pardon before conviction, and may thus intervene promptly for the relief of a witness to whom immunity has been promised by another department of the government, if mercy so inclines him. The Governor may not pardon until the offender has been tried and guilt has been established by the judgment of a court (Const. art. IV, § 5).

Nothing to the contrary was intimated in *People* v. *Whipple* (9 Cow. 707). The only question before the judge in that case was whether in the exercise of a sound discretion he would receive the testimony of an accomplice and recommend a pardon. There are statements in the course of the opinion which the Supreme Court in the *Whisky* cases characterized as " unguarded " (*The Whisky Cases, supra*, at p. 605). If we take them at their face value, they do not rule the case at hand. The recommendation of clemency is stated to be a recommendation and nothing more, and the Executive is free to heed or to reject it. Conceivably he will give not a full pardon, but a limited one, or a pardon coupled with conditions. Neither in the *Whipple* case nor in any other case decided in this State is there a ruling that an accomplice may be compelled against his protest to testify to his crime and to accept as adequate indemnity the hope of pardon in the future (TAFT, J., in *Matter of Irvine, supra*).

We put aside as remote and unsubstantial the supposed
peril of exposure to prosecution for the making of false
tax returns to State or Federal officers (*Mason* v. *United
States*, 244 U. S. 362; *Jack* v. *Kansas*, 199 U. S. 372).

When upon the face of a question it would seem that
to answer could not tend to implicate in crime, a court
will exercise a discretion in determining whether to accept
the mere conclusion of the witness that the tendency is
present (*Mason* v. *U. S., supra*), though in every instance
the conclusion is entitled to weight (*People ex rel. Taylor*
v. *Forbes*, 143 N. Y. 219). On the other hand, when the
obvious effect of the question is to call for the confession
of criminality, when that indeed is its avowed purpose,
immunity is not adequate unless the crime has been
obliterated.

The upshot of the whole discussion is, therefore, this:
The witness has immunity by force of Penal Law, section
381, sufficient to call for a response as to payments to
public officers to affect their public acts. The witness
has no immunity by force of section 584 or otherwise
sufficient to call for a response as to a mere conspiracy
to bribe, not followed or accompanied by payment, or
as to any corrupt agreement halting at the stage of
mere attempt.

The way to compel disclosure as to conspiracies and
attempts is not obscure or devious. A grant of immunity
similar to the one contained in the resolution may be
embodied in a statute. The Legislature, when it con-
venes, may pass an act of amnesty with the approval of
the Governor, an act of amnesty co-extensive with the
privilege destroyed. The appellant as well as other
witnesses will then be under a duty to declare the whole
truth, irrespective of the number or the nature of the
crimes exposed to view. Even if we were able to read
a different meaning into the statutes now existing, the
time in all likelihood would not be distant when there
would be need of supplemental legislation to give immunity

for other crimes, for crimes not covered by the sections dealing with conspiracy and bribery. A witness exposed to prosecution for larceny or extortion would be wholly without the pale of the immunity provisions in any statutes now existing, however liberally construed.

We are not unmindful of the public interests, of the insistent hope and need that the ways of bribers and corruptionists shall be exposed to an indignant world. Commanding as those interests are, they do not supply us with a license to palter with the truth or to twist what has been written in the statutes into something else that we should like to see. Historic liberties and privileges are not to bend from day to day " because of some accident of immediate overwhelming interest which appeals to the feelings and distorts the judgment " (HOLMES, J., in *Northern Securities Co.* v. *United States*, 193 U. S. 197, 400), are not to change their form and content in response to the " hydraulic pressure " (HOLMES, J., *supra*) exerted by great causes. A community whose judges would be willing to give it whatever law might gratify the impulse of the moment would find in the end that it had paid too high a price for relieving itself of the bother of awaiting a session of the Legislature and the enactment of a statute in accordance with established forms.

The order of the Appellate Division and that of the Special Term should be modified by directing that the appellant stand committed until he answers the question whether he has bribed any public officer, such imprisonment not to exceed the period of thirty days, and as so modified affirmed.

CRANE, J. (concurring). Whatever doubt I had as to the extent of the immunity furnished by section 584 of the Penal Law, it is cleared away by the reading of other provisions dealing with witnesses. When the Legislature intended full and complete immunity, it knew the phrase-

ology necessary to reach this result. Thus in the Banking Law (Cons. Laws, ch. 2, § 370) the Legislature enacted: " Any person offending against any provision of this article is a competent witness against any other person so offending, and may be compelled to attend and testify upon *any trial, hearing or proceeding, or investigation,* in the same manner as any other person." Such witness shall not thereafter be prosecuted for any such violation.

See, also, the law relating to the elective franchise. Section 770 of the Penal Law enacts: " A person offending against any section of this article is a competent witness against another person so offending and may be compelled to attend and testify *on any trial, hearing or proceeding or investigation* in the same manner as any other person." Any person so testifying shall not be prosecuted.

The immunity for conspiracy is not so broad, not so complete. It is limited to investigations before any court, magistrate or referee. The phrase in section 584 of the Penal Law is: " No person shall be excused from attending and testifying, or producing any books, papers, or other documents *before any court, magistrate, or referee,* upon any investigation, proceeding or trial, for a violation of any of the provisions of this article." Such a limitation of immunity from prosecution is not infrequent in the statutes. It is made dependent upon appearance as a witness before various persons, or bodies. (See the following: Conservation Law [Cons. Laws, ch. 65], § 8, subd. 4; Agriculture and Markets Law [Cons. Laws, ch. 69], §§ 32 and 33; Gen. Bus. Law, § 345; Gen. Corp. Law [Cons. Laws, ch. 23], § 170; Ins. Law [Cons. Laws, ch. 28], §§ 65 and 89.) By this latter law the witness is given protection when testifying " before any court or magistrate, upon any investigation, proceeding or trial." The word " referee " is left out.

By section 395 of the Penal Law, relating to bucket shops, the witness to have immunity must testify before " any court or magistrate, upon a trial, investigation, or

proceeding *initiated by the district attorney, grand jury or court.*" See like provisions in section 996 of the Penal Law, relating to gambling; section 1200, covering insurance rebates; section 166, anarchy; section 439 (2), business and trade.

The Public Service Law (Cons. Laws, ch. 48), section 20, provides but a restricted immunity.

Comparing, therefore, section 584 of the Penal Law with these other statutes shows that the words " any investigation " do notcover legislative investigations but investigations before any court, magistrate or referee. The place and the tribunal must have been intentional restrictions or limitations upon the protection to be furnished, as the Legislature left them out when providing for full and complete immunity upon *any* trial, proceeding or investigation.

For these additional reasons I concur in the opinion of the Chief Judge.

POUND, J. (dissenting in part). The Legislature has power to compel the attendance of witnesses and the production of books and papers in order that it may perform its constitutional functions in enacting laws to correct real or apprehended dangers. It may delegate this power to a legislative committee by resolution. (*Briggs* v. *Mackellar*, 2 Abb. Pr. 30; *Burnham* v. *Morrissey*, 14 Gray [Mass.], 226; *People* v. *Learned*, 5 Hun, 626; *People ex rel. McDonald* v. *Keeler*, 99 N. Y. 463; *McGrain* v. *Daugherty*, 273 U. S. 135, 175; *Sinclair* v. *United States*, 279 U. S. 263.)

In authorizing such an investigation the Legislature is not passing a law by bill, as statutes are enacted, subject to the approval of the Governor. (N. Y. Const. art. III, § 14; art. IV, § 9.) It is exercising an incident to the sovereign power of making laws and initiating legislation and in the exercise thereof it may not be subjected to restraint within the field as thus defined

except so far as the Constitution of the United States or the State of New York limits its powers and jurisdiction. Particularly it may investigate the conduct of public officials in view to some legislative action in regard to them. As this court said in *Wilckens* v. *Willet* (1 Keyes, 521, 525): " Its exercise " of the power to investigate " is often indispensable to the great end of enlightened, judicious and wholesome legislation." It is the duty of the Legislature to study governmental conditions and prepare legislation in regard thereto.

The purpose of such legislative investigations is not to detect crime, for the detection of crime is not a legislative function; nor to conduct fishing expeditions into private papers and affairs in the hope that something degrading may be pulled up. (*Sinclair* v. *United States, supra.*) Criminal acts may, however, be disclosed by the witnesses. The purpose is to enable the Legislature to exercise its law-making power under the Constitution. If the questions put to the witness are pertinent· to the matter under investigation the witness must answer unless he in good faith asserts the constitutional privilege against a real danger of self-incrimination. " No person shall be * * * compelled in any criminal case to be a witness against himself." (N. Y. Const. art. I, § 6.)

The constitutional privilege when it otherwise exists may be met only if the witness is given immunity, not from self-incrimination in the broadest sense, but from criminal prosecution in the courts of this State " for or on account of any transaction, matter or thing, concerning which he may testify, or produce evidence." (*Brown* v. *Walker,* 161 U. S. 591.) A provision that the evidence given by the witness shall not be received against him does not afford complete protection for it leaves the door open to his successful prosecution without the use of such evidence. (*Counselman* v. *Hitchcock,* 142 U. S. 547.) This court has adopted· the Federal rule. (*People ex rel. Taylor* v. *Forbes,* 143 N. Y. 219, 229;

*People ex rel. Lewisohn* v. *O'Brien,* 176 N. Y. 253, over-ruling its earlier decision in *People* v. *Hackley,* 24 N. Y. 74.)

The resort to immunity statutes seems to have proved itself a valuable and satisfactory aid in the ascertainment of facts in many cases. In New York such statutes exist in numbers, varying in language but indicating a general legislative purpose to grant immunity to a helpful criminal whenever public policy so dictates. They are entitled to the fullest faith and credit that a fair construction of their language permits. Else they become pitfalls for the unwary.

Under Penal Law, section 381, a person who testifies on any "trial, hearing, proceeding or investigation" to the giving of a bribe which has been accepted shall not be liable to prosecution for that bribery. The word "investigation" as used in this section was construed as including a legislative investigation, and a legislative investigation was in effect held to be a prosecution for receiving the bribe, under Const. art. XIII, § 3. (*People* v. *Sharp,* 107 N. Y. 427.) But the immunity is limited and not general. It covers only protection for the bribery testified to. The same word is used Penal Law, section 584, which gives complete immunity to one who testifies upon "any investigation, proceeding or trial" for a violation of any of the provisions of Penal Law, article 54, entitled "Conspiracy." I fail to see any substantial reason for extending the meaning of the word "investigation" in relation to bribery as was done in *People* v. *Sharp* (*supra*) and limiting it to judicial proceedings in relation to conspiracy as in *People* v. *Bryant Co.* (114 Misc. Rep. 133). Varied phraseology should not lead to subtle distinctions in meaning when the essential purpose is the same. Grammar should yield to legal intention. To effectuate the general legislative purpose, the word should be given as wide a construction as is necessary to protect the witness in his disclosures. Thus it has been held that the examination of a witness before

a grand jury is a "proceeding" under the anti-trust law. (*Hale* v. *Henkel*, 201 U. S. 43.) The immunity here granted covers all offenses created by the article relating to conspiracies, including conspiracies to bribe. Other immunity statutes apply in greater or less degree to other crimes or small groups of crimes. (*E. g.*, Penal Law, §§ 166, 395, 996, 1472, 1787, 2097; Public Service Law, § 20; Banking Law, § 370; Ins. Law, § 65.)

The immunity granted is not general in language and may not be in effect, if we are to give meticulous heed to the decisions of this court and the Supreme Court of the United States. It does not cover the offer of a bribe to a public officer which is not accepted. (Penal Law, § 379.) Conceivably other crimes under the State law may be revealed by the testimony of the witness which are not covered by the numerous statutory immunities. Although the immunity need not be so broad as to cover the faintest trace of possible criminality (*Brown* v. *Walker*, *supra*), when we are dealing with a constitutional privilege, in the absence of a statute authorizing a grant of immunity in all criminal cases, we should not hastily brush away its protection with the speculation that it will scarcely be needed. In the investigation before us it would seem that the opportunities of prosecution for self-disclosed offenses, where statutory immunity is not granted, while rare may not be so illusory as to constitute no "real or probable danger" to the witness. (*People* v. *Priori*, 164 N. Y. 459; *Mason* v. *United States*, 244 U. S. 362.)

We must, therefore, consider the effect of the joint resolution under which the legislative committee is functioning. A legislative bill which governs all persons within the jurisdiction of the enacting power must be presented to the Governor before it becomes a law. (N. Y. Const. art. IV, § 9.) Particularly is this true of appropriation bills and without an appropriation an investigation committee would scarcely be able to function.

(N. Y. Const. art. III, § 21.) A joint resolution need not be so presented if it relates to legislative activities auxiliary to the law-making power. It has been said that the Governor is a part of the law-making power (*People v. Bowen*, 21 N. Y. 517), but he acts in an executive capacity in passing on bills. " The legislative power of this State shall be vested in the Senate and Assembly." (N. Y. Const. art. III, § 1.) It is vested therein entirely, subject only to constitutional limitations. (*Bank of Chenango v. Brown*, 26 N. Y. 467, 469; *People ex rel. McDonald v. Keeler*, *supra*, p. 479.) Each house acts free from executive control in making its own rules and in judging of the elections, returns and qualifications of its own members. (N. Y. Const. art. III, § 10.)

The power of the joint committee to grant immunity is given in the broadest terms, but it is given by a joint resolution and not by statute, and it is contended that it is beyond the legislative power to grant immunity by joint resolution to witnesses summoned before it. The answer hangs on the reasonable extent of the unquestioned right of the Legislature to compel witnesses to attend and give evidence for legislative purposes. What may they do with the witness if he proves recalcitrant? They may do all that is auxiliary to or implied in the legislative power. They may punish for contempt. " The power to punish for disobedience and contempt in refusing to attend is a necessary incident to the power to require and compel attendance." (*People ex rel. McDonald v. Keeler*, *supra*, p. 483.) But the witness may assert his constitutional privilege. This is a right which the vilest may claim for his protection but only so long as he acts in good faith in the face of danger of a criminal prosecution in this State. (*Matter of Levy*, 255 N. Y. 223, 225.) May it be met by a grant of immunity from the committee acting under the terms of the joint resolution?

The grant of immunity is a legislative function. The

Governor may pardon after conviction (N. Y. Const. art. IV, § 5), but he may not grant immunity from criminal prosecution nor may the courts. Amnesty is the determination of the legislative power that the public welfare requires the witness to speak. (*Burdick* v. *United States*, 236 U. S. 79; *Biddle* v. *Perovich*, 274 U. S. 480.) Full immunity has been granted to witnesses in proceedings under the General Business Law, §§ 345, 359) and in many other cases. Such immunity has been granted by statute because the proceedings are not wholly legislative in their character. They may be administrative or judicial. When the Legislature acts in its own concerns, in a strictly legislative inquiry, no provision of the State or Federal Constitution is indicated which necessarily stands in the way of the execution of its purpose to get at the facts for its future guidance by granting full and complete immunity to those who testify before it. When the witness no longer needs the shield of constitutional privilege to protect himself from criminal prosecution by the State, he may not use it to protect others. The State must be served. The public has a claim to every man's evidence unless the witness is specially exempted and protected by law. (See 4 Wigmore on Evidence, § 2192.) The Legislature is supreme in its own field. It may inquire, although it may not enact without executive approval unless over executive veto. The immunity granted is as broad as the privilege secured.

On narrower grounds the grant of immunity may serve a purpose. If information should be given under the legislative pledge of immunity which might lead to a possible prosecution of the witness for an offense where special immunity is not granted by statute, the danger of such a prosecution as a practical proposition would be " so unsubstantial and remote " that it would not be necessary to have a statute to provide against it. (*Jack* v. *Kansas,* 199 U. S. 372; *Hale* v. *Henkel, supra.*) Good faith and comity on the part of prosecutors should

be presumed and the joint resolution is at least a gesture of protection which should not be ineffectual but we do not place our decision on that ground. Good faith and comity, potent as they may be in fact, may not afford absolute protection in law. (*The Whisky Cases*, 99 U. S. 594.)

The Legislature should not be deprived of its necessary and appropriate attributes by exacting limitations upon the meaning of language. A witness may use his privilege as a shield to protect himself. When in reason it is no longer needed for that purpose, he should not be permitted to use it as a dam to block the flow of legislative inquiry. At least, the range of inquiry should be more widely extended than the prevailing opinion would permit and the refusal to answer the questions asked should be held contumacious and not privileged.

The order should be affirmed.

LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur with CARDOZO, Ch. J.; CRANE, J., concurs in separate opinion; POUND, J., dissents in part and writes for affirmance.

Ordered accordingly.