Marshall E. Livingston, J.
This is a civil action for damages, tried without a jury, concerning the embezzlement and conversion of plaintiff’s funds by the defendant, Robert W. Smith, during the period between March 13,1963 and November 3,1966.
Jeanne M. Smith, the wife of Robert W. Smith, was joined as a codefendant. Additional relief was also sought from Mrs. *1066 Smith, asking that she be directed to reconvey two parcels of realty formerly owned by the defendants, as tenants by the entirety, which are subject to the plaintiff’s warrant of attachment. While these properties were duly attached, the defendant Robert W. Smith, by quitclaim deeds, conveyed them to his wife Jeanne M. Smith, who now holds title.
At the close of the proof, I directed a verdict in favor of the plaintiff against the defendant Robert W. Smith and dismissed the complaint against his wife, Jeanne M. Smith. I directed, however, that Jeanne M. Smith reconvey the subject .realty to Robert W. Smith and herself, as tenants by the entirety, so that title thereto shall henceforth be held as it was when the plaintiff procured the warrants of attachment.
On March 19, 1963, at a special meeting of Greece Volunteer Ambulance Service, Inc., the defendant Robert W. Smith was duly elected its treasurer.
In October, 1966 the plaintiff’s bank account became overdrawn, and an investigation was instituted. On October 27, 1966 Robert W. Smith signed a statement procured by George Adams, a representative of Travelers Indemnity Company, the surety on the treasurer’s $8,000 bond.
Objection was made that the Miranda rule should preclude the statement, which admitted an embezzlement. The statement, which was the foundation supporting the finding that Robert W. Smith was liable to the plaintiff, was not given in circumstances whereby the Miranda rule applies. This is a civil action, and the criminal aspect has now been resolved. Robert W. Smith pleaded guilty prior to this action and has now served his sentence.
Although an objection was not made, I deem it important to also point out that the defendant’s statement was an extrajudicial admission by him. If this statement had been used in the criminal prosecution, then defendant’s Fifth Amendment rights, Miranda warnings and the like would have applied. However, the criminal aspect of this matter has been concluded, and as stated in Richardson, Evidence (9th ed., § 537, p. 551): u When the danger of prosecution has been effectively removed, the reason for the privilege against self-incrimination no longer exists and, consequently, the privilege cannot properly be asserted. Thus, where the prosecution for the offense which may be disclosed is barred by the doctrine of double jeopardy, or by the statute of limitations, or by executive pardon, or by reason of a grant of immunity, or in any other legally effective way, the witness may be compelled to answer.” (Emphasis supplied.) See, also, Matter of Doyle (257 N. Y. 244, 250).
*1067 The written statement given to the representative of the Travelers Indemnity Company was an admission against interest (Letendre v. Hartford Acc. & Ind. Co., 21 N Y 2d 518; Notara v. De Kamalaris, 22 Misc. 337; 31A C. J. S., Evidence, pp. 769-772; 20 Syracuse L. Rev. 640).
Accordingly, the sole question remaining is how much the defendant Robert W. Smith owes to the plaintiff. Jeanne M. Smith, as suggested earlier in this opinion, is not liable for the embezzlement of her husband. No proof was offered imputing knowledge by her of his defalcations, that he was acting as her agent, or that she ratified his acts so as to make her liable along with her husband (see 15 N. Y. Jur., Domestic Relations, §§ 270, 272, 273, 283, 301).
There are certain amounts conceded by defendant Robert W. Smith to be due plaintiff. These may be summarized as follows:
1. Amounts withdrawn from plaintiff’s checking account for the personal use of Robert W. Smith................ $16,179.47
2. Withdrawn from Central Trust Company savings account and retained by Robert W. Smith................ 3,000.00
3. Withdrawn from Marine Midland Trust Company savings account and retained by Robert W. Smith........ 6,123.50
Total......... $25,302.97
This total substantially balances with the amount claimed by plaintiff in its bill of particulars, and as reconstructed from Exhibits 9,11,16, 47, 48 and 51 in evidence.
Plaintiff claims, however, that the amount withdrawn from its checking account for the personal use of Robert W. Smith was $16,394.97.
The difference of $215.50 is accounted for by an unnumbered check of plaintiff, payable to J. C. Penney, for $188, dated July 22,1965, which was cashed by the defendant or some unauthorized person. The balance of $27.50 is plaintiff’s check, No. 1374, dated April 25, 1966, payable to Charlotte Weekend Bowling League. Defendant Robert W. Smith denied responsibility for these two checks, and under the proof, I hold that a doubt exists as to these two checks. I hold Robert W. Smith responsible in these three categories for the amount of $25,302.97, which he concedes.
The item known as the “ dues account ” (Exhibit 10) presents a quandary. The bill of particulars submitted by plain *1068 tiff makes the statement that $1,638 is missing from the “ dues account ” and lists amounts for four separate years, as follows: 1963, $423; 1964, $413; 1965, $403; 1966, $399. However, Exhibit 10, which purports to b'e Marine Midland’s record of the “ dues account ’ ’ from March 19, 1963 to January 7, 1966, shows deposits as follows: 1963, $727; 1964, $428.50; 1965, $441.20 for a total of $1,596.70, with a balance on January 7, 1966 of $2.28.
This is not the satisfactory proof needed to establish the conversion claimed. There was no testimony to substantiate the amounts claimed in the bill of particulars, and Exhibit 10 shows deposits and withdrawals only up to January 7, 1966. It may be that defendant kited funds from the checking account into the “ dues account ”. He may have used the cash dues money given to him by the secretary. In view of his admitted defalcations, he perhaps did. However, plaintiff’s only proof in this regard is not a fair preponderance of the evidence, and is contradictory. In addition, the excerpts from the minutes of the board meetings show that less than $550 was turned over to Robert W. Smith for dues during this same period. Therefore, I shall not charge the defendant with this item of $1,638.
The last disputed category represents unauthorized withdrawals, for which no canceled checks are available, said to be- chargeable to Robert W. Smith in the amount of $14,377.89. Suffice it to say that John J. Hannon, one of plaintiff’s members, performed a monumental task in reconstructing plaintiff’s financial records through the three-year, seven-month period in question. During the time Robert W. Smith was treasurer, all bank statements and canceled checks were sent to him at his home, 423 Kartes Drive, Rochester 16, New York. He also had sole control of the checkbooks.
In October, 1966, when the shortage was discovered, Mrs. Smith, upon demand therefor, gave Mr. Valvano, plaintiff’s president, all the books, bank statements and canceled checks which the defendant had in his possession. These records were incomplete. For example, Mrs. Smith turned over only eight original monthly statements of the checking account out of the 43 later furnished by the bank. With reference to the other savings bank records which were missing, the bank furnished copies of the accounts, withdrawal slips and other data. Mr. Hannon, by comparing the canceled checks on hand against the copies of the monthly bank statements and the plaintiff’s disbursement books, was able to compile an accurate checking account history. This shows the date a check was paid, its number, or that the check was missing (CM), the amount thereof, and to whom it was made payable.
*1069 Using these records, independently of the figures and data set forth in the hill of particulars, I computed the unauthorized withdrawals, where no canceled checks were available to indicate the payee.
It should here be pointed out, despite the defendant’s contention that he is not liable for the proceeds of these withdrawals, he must be accountable for several reasons:
1. All bank statements and canceled checks of the plaintiff were sent to the plaintiff, “ C-0 Robert W. Smith, 423 Kartes Dr., Rochester 16, N. Y.”. This was the defendant’s home address.
2. He also had exclusive control of the plaintiff’s disbursement books, which were audited by a committee of three members each month. The audited bills were presumed to have been promptly paid by Robert W. Smith.
3. Each regular monthly checking account statement, directly under the box carrying the plaintiff’s account number 556 80151 2, bore this notice in bold type: “ Please examine at once: If no error is reported within fifteen days of mailing or delivery, the account will be considered correct. All items are credited subject to final payment.” No errors were ever reported, nor did the defendant claim bank error in this regard.
Mr. Smith, therefore, became personally accountable for the ‘ ‘ checks listed in order paid ’ ’ as shown on the monthly statements. Neither the secretary, nor any of the other officers of the plaintiff had any access whatsoever to this account. No countersignature was required. The exclusive control of the deposits and withdrawals by check was in Robert W. Smith. He was solely responsible for the funds passing through the account from March 19, 1963 through November 3, 1966, at which time the account was $5,829.30 overdrawn.
As the result of my reconciliation of the checking account, I find as follows with respect to the unauthorized withdrawals, no canceled checks being available, for which Robert W. Smith is liable:
1963 ............................... $ 2,098.47
1964 ............................... 1,993.82
1965 ............................... 10,175.57
1966 ............................... 110.03
Total.......... $14,377.89
A summary of defendant’s liability is as follows:
Conceded liability.................. $25,302.97
*1070 Unauthorized withdrawals, listed above............................ 14,377.89
Gross total liability.............. $39,680.76
Credit net receipt from sale of 423 Kartes Drive, according to the testimony of plaintiff’s president, Anthony Valvano................. 9,379.06
Net due plaintiff from defendant.. $30,301.70
The proceeds received by plaintiff from Travelers Indemnity Company on the bond in the amount of $8,000 may not be credited to the amount due plaintiff from Robert W. Smith, as defendant urges. If I allow the defendant this credit of $8,000, it would force the Travelers Indemnity Company to go through another lawsuit to establish the loss under the bond and its right to recover against Robert W. Smith. Furthermore, there was no proof that Travelers was subrogated to plaintiff’s rights against the defendant and, therefore, entitled to bring action for the $8,000 against Robert W. Smith. The plaintiff and Travelers can agree upon an equitable application of any funds plaintiff collects on the judgment so that Travelers may be reimbursed in an appropriate manner and at an appropriate time. =