71 So.2d 887 (1954)
STATE ex rel. MITCHELL
v.
KELLY.
Supreme Court of Florida. En Banc.
March 19, 1954.
Rehearing Denied May 4, 1954
*888 Hubbard & Everett, Miami, Turnbull & Pepper, Tallahassee, for relator.
Richard W. Ervin, Atty. Gen., Mark R. Hawes, Asst. Atty. Gen., for respondent.
DREW, Justice.
January 16, 1953, E.R. Mitchell, the relator, Dave Marcus and others were informed against in Dade County for conspiracy to violate the lottery laws of this State. Dave Marcus was named the principal co-conspirator in the information.
While this information was pending, relator was subpoenaed before the Dade County, Florida Grand Jury in connection with "* * * an investigation into gambling activities in Dade County of Dave Marcus, both as to conspiracy to violate the gambling laws, bookmaking, a charge of bookmaking, and a charge of conducting a lottery." To each of eleven questions[1] there propounded by the Grand Jury or under its direction, the relator declined to answer on grounds, "that it may tend to incriminate me in the State and Federal Courts." Thereupon, in appropriate proceedings, the Circuit Court of Dade County adjudged relator in contempt for failure to answer the propounded questions and sentenced him to six months in jail. Supersedeas was denied by the Circuit Court, whereupon relator filed in this Court his petition for writ of habeas corpus, setting out the above facts. Respondent filed a return and motion to quash.
In view of the importance of this question and the discussion of the subject which we deem necessary and advisable, we here interrupt the orderly course of this opinion for a brief review of the historical background of the privilege against self-incrimination *889 and of statutes granting immunity to certain persons when their evidence is coerced.
Privilege against self-incrimination has its roots embedded in events occurring as early as the Thirteenth Century. And in England before the end of the Seventeenth Century none of the courts denied the rule that no man should be compelled to accuse himself, and this privilege by then also was extended to include a witness as well as a party charged. This privilege is a sacred part of the Federal Constitution and of the Constitution of every state except Iowa and New Jersey. See 8 Wigmore, Evidence (3d ed. 1940), Sections 2250-2252 passim.
It should be noted that ordinarily the privilege does not protect from the revealing of facts concerning a civil liability or mere infamy but does extend to forfeiture and penal liability. And the protection provided applies to all types of proceedings wherein testimony is given and applies alike to a witness as well as a party who is accused. See 8 Wigmore, Evidence (3d ed. 1940) Sections 2255-2257 passim.
Immunity statutes have been in use for more than two centuries for the investigation of numerous types of offenses but particularly those involving a concert of action by the nature of which, usually, persons having the most information are themselves involved in the offense itself. Examples of such offenses are violations of criminal laws relating to political activities, intoxicating liquors, gaming, frauds, and monopolies. These and similar offenses which require efficacious investigation by any lawful means provide the principal field of operation. And statutes of this nature are now widely used. See 8 Wigmore, Evidence (3d ed. 1940) Section 2281 passim.
In Florida the privilege is embedded in the Constitution in Section 12 of the Declaration of Rights, F.S.A., which in part provides: "No person shall be * * * compelled in any criminal case to be a witness against himself". And in the statutory law of Florida there is a long history of "immunity statutes".[2]
The Florida Statute involved in the main case was first enacted in 1905 as Chapter 5400. The title to that Act reads:
"An Act to Provide for the Privileges of Witnesses in Investigations and Prosecutions for the Violation of the Statutes Against Bribery, Gaming and Gambling and for Violation of the Statutes Against the Illegal Sale of Spirituous, Vinous or Malt Liquors."
The present Act, Section 932.29, Florida Statutes, 1951, F.S.A., reads:
"No person shall be excused from attending and testifying, or producing any book, paper or other document before any court upon any investigation, proceeding or trial, for a violation of any of the statutes of this state against bribery, burglary, larceny, gaming or gambling, or of any of the statutes against the illegal sale of spirituous, vinous or malt liquors, upon the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to convict him of a crime or to subject him to a penalty or forfeiture, but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing *890 concerning which he may so testify or produce evidence, documentary or otherwise, and no testimony so given or produced shall be received against him upon any criminal investigation or proceeding."
We now again turn our attention to the contentions currently before us. The refusal of relator to answer was upon dual grounds. We consider first the ground that relator could remain silent because of possible self-incrimination in the State Courts. Necessary to determination thereof is consideration of the effect of Section 932.29, Florida Statutes 1951, F.S.A., supra.
In contending that he was not required to answer the questions propounded by reason of self-incrimination under state law, relator asserts that the information sought was privileged under the Constitution of Florida, Declaration of Rights, Section 12, supra. No question is raised as to the validity of the statute, but it is urged that it has no application to the situation here involved. Relator claims this is so because the investigation of the grand jury was, among other things, into the subject of conspiracy to violate the gambling laws and points out that "conspiracy" is not mentioned in this statute. Therefore, he claims, that statute has no applicability and in support of this position he cites Johns v. State, 157 Fla. 721, 27 So.2d 75; State ex rel. Benemovsky v. Sullivan, Fla., 37 So.2d 907; People v. Rockola, 339 Ill. 474, 171 N.E. 559, 69 A.L.R. 852; Doyle v. Hofstader, 257 N.Y. 244, 177 N.E. 489, 87 A.L.R. 418.
The State contends that the statute does apply to the situation here involved and being applicable rendered relator immune to "any crime which might be disclosed" by his testimony so given, which immunity necessarily included immunity for conspiracy to violate the gambling laws. The state relies principally on State v. Hancock, 146 Fla. 693, 1 So.2d 609.
We first consider the claims of relator.
In Johns v. State, supra, the defendant was charged with a violation of the lottery laws. He moved to quash the information on grounds he was immune from prosecution under Section 932.29 by reason of having previously testified concerning the lottery offense with which he was charged. The testimony so relied upon was given on cross-examination by defendant and over his objection at a preliminary hearing inquiring into the charge of first degree murder against him. Following his conviction on the lottery offense, defendant on appeal challenged the correctness of denial of the motion to quash. In affirming the conviction, we noted that the proceeding at which defendant was required to testify was "not the violation of any of the statutes of this State against bribery, burglary, larceny, gaming or gambling or any of the statutes against the illegal sale of spirituous, vinous or malt liquors" [157 Fla. 721, 27 So.2d 76] and therefore the testimony so given "did not bring the accused within the purview of the immunity afforded by the statute, supra."
In the case of State ex rel. Benemovsky v. Sullivan, supra, the county solicitor was conducting an investigation into criminal Communism. To questions propounded about that subject, the relator invoked her constitutional privilege against self-incrimination but was held in contempt for failure to answer. In the subsequent habeas corpus proceedings, the respondent contended that Section 932.29 was applicable. We held the contempt order invalid and pointed out that there was no language in the terms of the statute that would authorize its application to an investigation of criminal Communism.
The case of People v. Rockola, supra, involved the trial of one Collins charged with conspiracy to bribe. A statute empowered the court under certain conditions to grant immunity to a witness at the trial of any other person charged with the crime of bribery. At the trial the appellant was called as a witness against the defendant. He refused, notwithstanding a court order granting him immunity, to answer questions pertaining to the conspiracy charge against Collins, and for that he was held in contempt of court. On appeal the conviction of contempt was reversed, the court stating *891 that the statutory power to grant immunity applied only when the offense being tried or under investigation was one mentioned in the statute, which pertained only to the crime of bribery, and so the trial court had no authority to enter its order where the offense on trial was merely a charge of conspiracy to commit bribery, not being an offense mentioned in the statute.
The Johns and Benemovsky cases simply hold that where a statute provides immunity to a witness testifying at an investigation into certain specified offenses, the statute has no application where the subject matter of the investigation is only into an offense not specified in the statute. The case of People v. Rockola, supra, holds that where a statute provides authority for witness immunity at an investigation or trial of a certain offense, the statute has no application to a situation where the trial is for the lesser crime of conspiracy to commit that offense. These cases do not hold that, where the subject matter of an investigation is an offense specified in a statute providing witness immunity for disclosures made at investigation about that offense, the fact that involved also is a conspiracy to commit the offense, will preclude applicability of the statute. On the contrary, in jurisdictions where the question has arisen, it has been decided otherwise. State v. Chitwood, 73 Ariz. 314, 240 P.2d 1202; Ex parte Williams, 127 Cal. App. 424, 16 P.2d 172.
The case of Ex parte Williams, supra, is particularly in point. That case involved defendants charged with violation of certain gaming laws and also with conspiracy to violate those laws. At a preliminary hearing Williams refused to answer questions about the subject of the charges against defendants on grounds of self-incrimination. The California statute provided:
"No person, otherwise competent as a witness, is disqualified from testifying as such concerning the offense of gaming, on the ground that such testimony may criminate himself; but no prosecution can afterwards be had against him for any offense concerning which he testified." Pen.Code, § 334.
Williams was held in contempt for failure to answer and brought habeas corpus in the appellate court. That court held that the statute was applicable and provided immunity to the petitioner for testimony sought. In so holding the court stated, "The concluding clause of section 334 of the Penal Code, `but no prosecution can afterwards be had against him for any offense concerning which he testified,' is in effect the same and as broad as the expression in the statute referred to in the Schwarz Case [People v. Schwarz, 78 Cal. App. 561, 248 P. 990, 993] to wit: `No person shall be prosecuted * * * for or on account of any act, transaction, matter, or thing concerning which he shall have been so compelled to testify.'" Ex parte Williams, 127 Cal. App. 424, 16 P.2d 172, 175.
In the case of People v. Schwarz, 78 Cal. App. 561, 248 P. 990, 993, cited in Ex parte Williams, supra, the court reversed a conviction of two of several defendants for conspiracy to obtain money by false pretenses after it appeared each of the two had testified to facts relevant to the charge while under subpoena before a commissioner under the California Corporate Securities Act, which Act provided in part that no person shall be excused from so testifying or furnishing evidence on grounds of self-incrimination but that, "No person shall be prosecuted, punished, or subjected to any penalty or forfeiture for or on account of any act, transaction, matter, or thing concerning which he shall have been so compelled to testify under oath, or to produce such documentary or other evidence * * *." St. 1917, p. 682, § 17.
In the case of State v. Chitwood, supra, the defendant appealed from a conviction for conspiracy to operate a gambling casino, claiming immunity because of having previously testified before the grand jury concerning gambling which was substantially connected with the offense of conspiracy to operate a gambling casino. A statute provided, "No person shall be exempt from testifying concerning any offense mentioned *892 in this article [gaming] on the ground that such testimony may incriminate him; but no prosecution can afterwards be had against him for any offense concerning which he testified." A.C.A. 1939, § 43-2715. The court said:
"We therefore hold that under the provisions of section 43-2715, supra, defendant is immune from prosecution for the crime of conspiracy to operate a gambling casino in Pima County for the reason that he was required, under compulsion, to give testimony before the grand jury concerning gambling or gaming which was substantially connected with the offense of conspiracy to operate a gambling casino and that the evidence given therein is material to his prosecution on the charge of conspiracy." State v. Chitwood, 73 Ariz. 314, 321, 240 P.2d 1202, 1207.
In the cases of Ex parte Williams, supra, and State v. Chitwood, supra, the pertinent language of the immunity statutes involved, viz.: "no prosecution can afterwards be had against him for any offense concerning which he testified" was held equivalent in scope to similar language of the immunity statute in the case of People v. Schwarz, supra, to wit: "No person shall be prosecuted, punished, or subjected to any penalty or forfeiture for or on account of any act, transaction, matter, or thing concerning which he shall have been so compelled to testify * * *." (Italics supplied.)
A comparison of the relevant language of the Florida Statute, Section 932.29, "* * no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may so testify * *" (Italics supplied) shows that this language is in all material respects the same as that of the foregoing three cases. Clearly the immunity granted by the Florida statute is coextensive with that of the statutes involved in the three cases last discussed. If we follow those cases (which we think sound) the statute was applicable to the investigation involved in the instant case.
If the subject matter of the investigation of the Dade County grand jury had been only a conspiracy to violate the gambling laws, the immunity statute would have had no application, such investigation being only into an offense not specified in and subordinate to the offenses enumerated in the statute. See People v. Rockola, supra. But such was not the situation. The subject matter of the investigation was into gambling activities, including bookmaking and conducting a lottery, being offenses clearly within the statute. The fact that a related subordinate offense was also involved, that is, conspiracy to violate the gambling laws, did not serve to render the statute inapplicable. State v. Chitwood, supra; Ex parte Williams, supra; People v. Schwarz, supra. This result is particularly clear because the statute, being applicable because of the inquiry into gambling, by its very terms afforded the witness testifying thereto, complete immunity as to any possible disclosure of a related conspiracy to violate the gambling laws. State v. Chitwood, supra; Ex parte Williams, supra.
The case of Doyle v. Hofstader, 257 N.Y. 244, 177 N.E. 489, 491, 87 A.L.R. 418, cited by the relator, is not authority to the contrary. The relevant statute in that case was entirely different from the language of the Florida statute. The New York statute in part provided, "A person so testifying to the giving of a bribe which has been accepted, shall not thereafter be liable to indictment, prosecution, or punishment for that bribery, * * *." Penal Law, McK. Consol.Laws, c. 40, § 381, Laws 1909, c. 88. (Italics supplied.) Thus the immunity it defined was limited and narrow. Concerning the statute the court said, "The witness is relieved of the risk of prosecution in one situation and one only; he must have testified to the offer or giving of a bribe which has been accepted. [Citation omitted.] If there has been a conspiracy to bribe without evidence of acceptance, the supposed exemption fails. If there has been an offer without acceptance, it fails again. * * *" Id., 257 N.Y. 244, 252, 177 N.E. 489, 491, 87 A.L.R. 418, 422, and the court *893 stated further, "Inquiry as to a consummated bribery stands upon a different footing * * *. If the bribe is admitted, all the circumstances attending it may thereupon be explored, the name of the officer, the purpose of the payment, and the particulars of time and place." Id., 257 N.Y. 244, 257, 177 N.E. 489, 493, 87 A.L.R. 418, 424. (Italics supplied.) Accordingly the court held that the witness, testifying before a legislative committee investigating conduct of the government of the City of New York, was in contempt for failure to answer a specific question about whether he had actually participated in a consummated bribe.
The court in that case simply held that, by its own restricted terms, the statute could not come into application and provide immunity to a witness until he testified to the giving of an accepted bribe whereupon "all the circumstances attending it may thereupon be explored, * * *" and pointed out that the statute could not apply should a witness testify to a conspiracy to bribe without evidence of acceptance since he would not be within the terms of the statute.
It is important to observe that this New York statute provided immunity only to such witness as might testify "to the giving of a bribe which has been accepted" and then only "for that bribery"; whereas, the Florida statute with reference to bribery (and other offenses) provides immunity to any witness testifying thereunder and "* * * for or on account of any transaction, matter or thing concerning which he may so testify * * *."
Having determined that the statute was applicable to the instant case, we now consider the State's contention pertaining to the extent of immunity effected. It asserts that the statute being applicable to the instant investigation, it conferred upon relator immunity for "any crime which might be disclosed" by his testimony, citing State v. Hancock, supra.
In that case the defendant was required to give testimony under the immunity statute. As a result he was charged with both embezzlement and larceny but the larceny charge was later dropped. Defendant filed a motion to quash the embezzlement charge which the lower court granted. On appeal the judgment for defendant was affirmed. It is true that this court there stated, "After he was required to testify, he was immune from prosecution for any crime about which he gave evidence and none of the evidence secured can be used against him." (Italics supplied.) However, the language there used must be construed in light of the facts of that case, and because of the broad interpretation here asserted by the State, we undertake to clarify the effect of the immunity statute.
Determining the extent of immunity effected under such statutes has raised perplexing problems. Note (1939) 118 A.L.R. 602ff. The requirements for validity of immunity statutes were defined many years ago in Counselman v. Hitchcock, 142 U.S. 547, 586, 12 S.Ct. 195, 206, 35 L.Ed. 1110, 1122. That case held an immunity statute invalid which provided a witness protection only to the extent that disclosures made by him shall not be used in evidence against him. And the court asserted that in order that such a statute be valid, it "* * * must afford absolute immunity against future prosecution for the offense to which the question relates." (Italics supplied.)
Unfortunately the quoted language of the Court left an area of ambiguity because it was not wholly clear whether "the offense to which the question relates" was confined to the offense which is mentioned in the applicable statute, or whether it pertained to the offenses necessarily revealed by an answer responsive to an eliciting relevant question. This ambiguity has become inherent in numerous immunity statutes and it is said that the cases interpreting them have not "* * * been overly enlightening as to the precise meaning thereof." Note (1939) 118 A.L.R. 602, 621.
Our own statute is ambiguous. For example, effort has been made (unsuccessfully) to invoke the statute although the subject matter of the inquiry was not of a nature to permit its application as in Johns *894 v. State, supra, where the subject of inquiry was murder, and State ex rel. Benemovsky v. Sullivan, supra, where the subject of inquiry was criminal Communism. The statute being applicable, it has been urged upon us that the immunity effected is confined to immunity only for offenses specifically enumerated in the act itself as in State v. Hancock, supra, where the state (unsuccessfully) asserted, although relevant facts were the same, there was no protection for disclosure of embezzlement, not mentioned in the statute, at an inquiry including the subject of larceny, an offense clearly mentioned in the statute. This confusion stems, in part at least, from a failure to comprehend that the five categories of crimes mentioned in the statute determine whether the statute is applicable at all, but do not define the extent of the immunity granted.
The subject matter of the pertinent "investigation, proceeding or trial" must be one or more of the five categories of crimes specifically enumerated in the statute, that is, "* * * any of the statutes of this state against bribery, burglary, larceny, gaming or gambling, or of any of the statutes against the illegal sale of spirituous, vinous or malt liquors, * * *." Otherwise, the statute is not involved. However, once the statute becomes applicable, the immunity effected is not confined to immunity for the crimes specifically enumerated therein. Instead, the immunity of the witness extends, by the terms of the statute, to "* * * any transaction, matter or thing concerning which he may so testify or produce evidence, * * *."
We interpret the words "transaction, matter or thing" to refer to offenses revealed by the testimony so given and not merely to the five offenses enumerated. The testimony so given need but be relevant to and have substantial connection with the subject of inquiry to bestow complete immunity for any offense revealed. Any narrower construction would raise serious question of the constitutionality of the statute. See State v. Chitwood, supra, Ex parte Williams, supra; United States v. Monia, 317 U.S. 424, 63 S.Ct. 409, 87 L.Ed. 376; Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118; Blau v. United States, 340 U.S. 159, 71 S.Ct. 223, 95 L.Ed. 170.
In United States v. Monia, 317 U.S. 424, 430, 63 S.Ct. 409, 412, 87 L.Ed. 376, 381, supra, the Court was confronted with application of the portion of the Sherman Anti-Trust Act, Act of February 25, 1903, 32 Stat. 854, 904, 15 U.S.C.A. § 32, pertaining to immunity extended to a witness and providing in part, "No person shall be prosecuted or be subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may testify or produce evidence, documentary or otherwise, * * *." The Court noted that this language was modeled after language drafted to meet the requirements of Counselman v. Hitchcock, supra, and said that the statute was intended to provide a witness "* * * complete immunity from prosecution respecting any matter substantially connected with the transactions in respect of which he testified" [317 U.S. 424, 63 S.Ct. 412]. It is interesting to observe that the pertinent language of the Florida immunity statute is practically identical to that used in the quoted portion of the Sherman Anti-Trust Act, supra.
The privilege afforded by the constitutional guarantee against self-incrimination extends not only to answers that would themselves support a conviction but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the witness for a crime. Hoffman v. United States, supra, (reversing a conviction for contempt for failure to answer questions before a Federal grand jury investigating frauds against the United States and other Federal crimes); accord Blau v. United States, supra, (reversing contempt conviction for failure to answer Federal grand jury questions about the Communist Party of Colorado).
The Arizona Supreme Court in State v. Chitwood, 73 Ariz. 314, 321, 240 P.2d 1202, 1206, supra, applied the principles of the last cited cases in construing its own immunity statute and stated:

*895 "We believe it is fair and reasonable to apply the principle affirmed in the Hoffman and Blau cases, supra, to state constitutional and statutory provisions giving immunity to witnesses testifying under compulsion against another person and hold that such witnesses are immune from prosecution for any offense substantially connected therewith if any testimony they are compelled to give in such a proceeding constitutes or furnishes a link in the chain of evidence needed to prosecute such witnesses thereafter charged with a crime concerning which they were required to testify." (Italics supplied.)
In this connection, we said in State ex rel. Benemovsky v. Sullivan, supra [37 So.2d 909], "* * * the real point here is whether or not the answers to the inquiries propounded to appellant tended directly or indirectly to incriminate her, and if so, was she immunized from prosecution by Section 932.29". (Italics supplied.)
We therefore hold that where a witness is required to testify in an investigation, proceeding or trial, the subject matter of which involves any of the five categories of crimes specifically enumerated in Section 932.29, Florida Statutes 1951, F.S.A., this statute is applicable. When the witness gives testimony responsive to questions which are relevant to such subject matter, the witness is free forever from being subjected to a penalty, forfeiture or prosecution for any offense substantially connected with the transaction, matter or thing concerning which he testified if any testimony so given in such inquiry constitutes a link in the chain of evidence needed to prosecute such witness thereafter charged for such offense revealed by testimony he was required to give, whether such testimony is used or not.
We think this construction of the Act conforms to constitutional requirements and yet puts to rest any fears that the Act could possibly serve as a sanctuary or provide plenary immunity for all past crimes of a testifying witness, by requiring that the protected testimony result from relevant answers to relevant questions.
We conclude there is no merit in relator's first ground for his silence.
Relator advances another ground for failure to answer, claiming that such answers would expose him to incrimination in the Federal courts. The State contends that the privilege against self incrimination pertains only to proceedings in the jurisdiction where invoked.
This Court early held that the Florida constitutional privilege against self incrimination protects against the use of testimony compelled under Federal law. See Clark v. State, 1914, 68 Fla. 433, 436, 67 So. 135, 136, where this Court reversed a conviction in which was used against the defendant testimony compelled under Federal Bankruptcy law, on the grounds that, "To permit the introduction of such proffered testimony would be violative of the provision of section 12 of the Declaration of Rights in our state Constitution in compelling, indirectly at least, the defendant in a criminal case to be a witness against himself." In accord with this holding is the case of People v. Lay, 193 Mich. 17, 159 N.W. 299, L.R.A. 1917B, 608.
However, a Federal Court will not reject evidence in a criminal case solely because it was compelled under State law. Feldman v. United States, 322 U.S. 487, 64 S.Ct. 1082, 88 L.Ed. 1408, 154 A.L.R. 982. In that case the Supreme Court in 1944 by a four-to-three decision upheld a Federal conviction in the trial of which relevant testimony of the defendant which had been compelled in supplementary proceedings in New York was received in evidence. In so deciding the "* * * Court declined to address itself to the vital question of law presented, i.e. whether as a rule of Evidence the prior testimony should have been excluded." 8 Wigmore, Evidence (3d ed. 1940) 1953 Pocket Supplement, Section 2283A, p. 160. Instead, the Majority Opinion posed the problem as one *896 involving the scope of the privilege against self incrimination under the Fifth Amendment to the Federal Constitution and, among other things, stated:
"* * * The immunity from prosecution, like the privilege against testifying which it supplants, pertains to a prosecution in the same jurisdiction. Otherwise the criminal law of the United States would be at the hazard of carelessness or connivance in some petty civil litigation in any state court, quite beyond the reach even of the most alert watchfulness by law officers of the Government." Feldman v. United States, 322 U.S. 487, 493, 64 S.Ct. 1082, 1085, 88 L.Ed. 1408, 1414, 154 A.L.R. 982, 988.
This result was reached notwithstanding the language of the court in the prior case of Jack v. State of Kansas, 199 U.S. 372, 382, 26 S.Ct. 73, 76, 50 L.Ed. 234, 237, 4 Ann.Cas. 689, 691, where the Court disposed of an argument that a Kansas statute unconstitutionally did compel Jack to confess his violation of a Federal criminal statute by asserting that, "We do not believe * * * such evidence would be availed of by the government for such purpose."
And the result in the Feldman case is criticized in the dissenting opinion by Justice Black, and numerous law review articles which emphasize that notwithstanding two distinct constitutional guarantees a witness nevertheless is forced to testify against himself under this decision. Note (1944) 13 Geo.Wash.L.R. 105; and see Notes (1944) 30 Cor.L.Q. 255; (1944) 53 Yale L.Jou. 364.
Further, the anomalous situation resulting from the decision in Feldman v. United States, supra, was commented upon by the Federal Circuit Court (Fifth Circuit) in Marcello v. United States, 196 F.2d 437, 443 (1952) as follows:
"A method by which the privilege may be completely circumvented suggests itself when we consider that State tribunals may pursue a like course with reference to criminal offenses against the federal government. See Feldman v. United States, 322 U.S. 487, 64 S.Ct. 1082, 88 L.Ed. 1408. With much inconsistency, we may indulge the hope that more state courts will follow the lead of the Supreme Court of Michigan in the view that,
"`It seems like a travesty on verity to say that one is not subjected to self-incrimination when compelled to give testimony in a State judicial proceeding which testimony may forthwith be used against him in a Federal criminal prosecution.' People v. DenUyl, 318 Mich. 645, 29 N.W.2d 284, 287, 2 A.L.R.2d 625, 628."
The case of People v. DenUyl, 318 Mich. 645, 29 N.W.2d 284, 2 A.L.R.2d 625, cited in Marcello v. United States, supra, is the principal case relied upon by relator in support of his second ground for refusal to answer the questions in the instant case.
In the DenUyl case the testimony sought to be compelled was from a witness at the time under a pending Federal charge for traveling in interstate commerce with intent to avoid testifying in Michigan concerning a state felony. It was clear that the testimony sought was relevant to the subject matter of the Federal charge. Under these circumstances the court upheld the witness's right to refuse to answer on the grounds of self-incrimination in the Federal court although the witness was provided immunity as to offenses under State law.
The result of the DenUyl case is in accord with the previous pronouncement of the Michigan court in the case of In re Watson, 293 Mich. 263, 284, 291 N.W. 652, 661. In that case the court made an extensive review of the problem and set forth its views as follows:
"We believe that this ancient privilege should be maintained against limitations that we conceive tend to *897 make it ineffectual, futile, and subversive of the spirit and letter of the Bill of Rights. Under our federal system of government, with coextensive jurisdiction of State and national government, a person subject to the laws of a State is, at the same time, subject to the laws of the federal government. A citizen of a State is a citizen of the United States (Fourteenth Amendment to the United States Constitution). After a review of the authorities and a consideration of the constitutional provisions and the principles involved, we are of the opinion that the privilege against self-incrimination exonerates from disclosure whenever there is a probability of prosecution in State or federal jurisdictions.
* * * * * *
"To overcome the privilege, the extent of the immunity would have to be of such a nature that it would protect, not only against State prosecution, but also against any reasonably probable federal prosecution. The claim of the privilege in the face of a State immunity statute cannot be used as a subterfuge or pretence to refuse to answer in proceedings to detect or suppress crime. But neither can the grant of immunity be used to compel answers that will lead straight to federal prosecution. Whenever the danger of prosecution for a federal offense is substantial and imminent as a result of disclosures to be made under a grant of immunity by the State, such immunity is insufficient to overcome the privilege against self-incrimination."
We feel that the observations of the Michigan Court are sound. However, we emphasize, as stated therein, "The claim of the privilege in the face of a State immunity statute cannot be used as a subterfuge or pretence to refuse to answer in proceedings to detect or suppress crime."
Further, the matter of deciding what answers may incriminate or tend to incriminate is not solely up to the witness himself but is one requiring the exercise of the sound discretion of the trial court under all the circumstances of the case. See Ex parte Senior, 37 Fla. 1, 19 So. 652, 32 L.R.A. 133.
In the instant case nothing whatever appears in the record to indicate any charge pending against relator under Federal law or any likelihood thereof with reference to the procedure below. On the contrary, the relator simply refused to answer every one of eleven questions put to him. Even by supposing affirmative disclosures to such of the questions as were proper, we fail to see how such answers of themselves could have placed relator in a situation of substantial and imminent danger of Federal prosecution. Nor can the witness leave the entire matter to speculation and conjecture. Therefore, we conclude from the record that relator under his second ground advanced for remaining silent wholly failed to lay any foundation upon which can be predicated a showing of abuse of discretion of the trial court.
For the reasons pointed out herein, the motion to quash is granted and the relator is remanded to the custody of the Sheriff of Dade County.
ROBERTS, C.J., and TERRELL, THOMAS, SEBRING and MATHEWS, JJ., concur.
BARNS, J., specially concurring.
BARNS, Justice (specially concurring).
This habeas corpus proceeding instituted in this court is a collateral attack on a judgment of criminal contempt. The judgment is final in its nature and the appropriate method of procuring review is by appeal. The necessity of resort to habeas corpus no longer exists. See Ex parte, Senior, 37 Fla. 1, 19 So. 652, In re Pennekamp, 155 Fla. 589, 21 So.2d 41.
The inquisition by the grand jury related to "the gambling activities in Dade County *898 of Dave Marcus both as to a conspiracy to violate the gambling laws, bookmaking, a charge of bookmaking, and a charge of conducting a lottery." After being so advised the petitioner, Mitchell, refused to answer each of the following questions on the ground that the answer may tend to incriminate him in the State and Federal Courts, to-wit:
"(a) Do you know Dave Marcus? (b) Have you ever been employed by Dave Marcus? (c) How long has Dave Marcus been gambling? (d) How long have you worked for Dave Marcus? (e) Do you know Ellie Mann? (f) Do you know whether or not Ellie Mann is engaged in gambling or bookmaking? (g) Are you presently working for Dave Marcus? (h) Do you know what the game of bolita is? (i) Do you know what Cuba is? (j) Do you know what bookmaking is? (k) Do you use or have you in the last two years, used your automobile in connection with gambling activities?"
The petitioner, Mitchell, as well as Marcus, was under prosecution for a criminal conspiracy to violate the lottery laws. See section 833.01, F.S.A. relating to criminal conspiracy. The witness immunity Statute, section 932.29, F.S.A. provides that "no person shall be excused from * * * testifying * * * before any court upon any investigation * * * for a violation of any of the statutes of this state against * * * gaming or gambling * * * upon the ground * * * that the testimony * * * required of him may tend to convict him of a crime * * * but no such person shall be prosecuted * * * for or on account of any transaction, matter or thing concerning which he may so testify * * * and no testimony so given * * * shall be received against him upon any criminal investigation or proceeding."
Upon citation by Rule Nisi and after hearing the petitioner was adjudged guilty of contempt whereupon this proceeding was instituted. The facts of the case give rise to the following question as stated by the respondent.
Is a witness guilty of contempt for refusing to answer questions propounded by a grand jury on the ground that his answers "may tend to incriminate him in the State and Federal Courts" when the witness and another are under prosecution for a criminal conspiracy to violate the gambling laws of the State and the questions tend to link the witness with the gambling activities of the other?
This witness immunity statute must be construed with caution since it places power in the State's Attorneys, county Solicitors, Grand Juries and Courts the power to absolve one of crime under the conditions specified in the law. The absolution flows from the giving of evidence that is required of the witness concerning the violation of the Statute against "bribery, burglary, larceny, gaming or gambling". It seems to be that to procure evidence of crime in this manner is to exculpate the witness of crime, if within the limitations prescribed by the Statute.
The language of Section 932.29, F.S.A. is general and provides for immunity for a witness "required" to testify for violations of Statutes against "bribery burglary, larceny, gaming or gambling". The inquisition of the Grand Jury to Dave Marcus was "Conspiracy to violate the Gambling Laws, Bookmaking, a charge of Bookmaking, and a charge of conducting a Lottery". It appears that a "conspiracy to violate the gambling laws" is within the scope of Section 932.29, supra. A criminal conspiracy as defined by Section 833.01, F.S.A. is "If two or more persons shall agree, conspire, combine or confederate: (1) to commit any offense * * *." It appears that for the purpose and intent of Section 932.29, supra, a conspiracy to gamble is as much a violation of the Statute against gambling as would be the conducting of a lottery. Statutes against gambling include those laws imposing penalties and forfeitures for activities the object of *899 which is to violate the statutes against gambling.
Article V of the Bill of Rights of the Constitution of the United States provides that no person "shall be compelled in any criminal case to be a witness against himself" but this provision is only a limitation on the Federal Government and is without application to the State. The State Constitution, Section 12, Declaration of Rights, contains the same language.
Does the constitutional provision against compulsory self-incrimination that "No person shall be * * * compelled in any criminal case to be a witness against himself". Section 12, Declaration of Rights, extend to criminality under the Federal law, or is it confined to the methods of the State law? Is it the intent of this Constitutional provision that the policy of the Federal sovereignty relating to crime should enlarge the privilege of a witness in proceedings under the method of the State, or is it the intent that the privilege shall be governed by the State's policy and methods?
When a witness obtains absolution of criminality by being required to testify concerning the "violation of any of the statutes of this state against * * * gaming or gambling" the State loses as much as the witness gains. If the State is to exchange immunity for testimony it is important and necessary to determine what the State must offer. To what extent must the State grant exculpation or immunity for crime?
The conclusion is that the provision of the State's Constitution against self-incrimination extends only to the methods and policy of this sovereignty and is not to be tested by laws of the sovereignty of the United States, and that it was the duty of the relator to answer since he by answering would receive absolution of criminality in this State in respect to the subject matter of that which he is required to testify.
NOTES
[1] Mitchell was asked the following questions by the State Attorney before the Grand Jury: (a) Do you know Dave Marcus? (b) Have you ever been employed by Dave Marcus? (c) How long has Dave Marcus been gambling? (d) How long have you worked for Dave Marcus? (e) Do you know Ellie Mann? (f) Do you know whether or not Ellie Mann is engaged in gambling or bookmaking? (g) Are you presently working for Dave Marcus? (h) Do you know what the game of bolita is? (i) Do you know what Cuba is? (j) Do you know what bookmaking is? (k) Do you, or have you in the last two years, used your automobile in connection with gambling activities?
[2] Examples are as follows: Blacklisting of discharged railroad employees, Section 3, Chapter 4207, Acts of 1893, now Section 351.22, F.S. 1951, F.S.A.; combinations against Florida meats, Section 5, Chapter 4534, Acts of 1897, now Section 544.05, F.S. 1951, F.S.A.; Railroad Commission investigations, Section 17, Chapter 4700, Acts of 1899, now Section 350.60, F.S. 1951, F.S.A.; paying officers unauthorized compensation, Section 2, Chapter 5416, Acts of 1905, now Section 838.08, F.S. 1951, F.S.A.; election laws, Section 61, Chapter 6469, Acts of 1913, now Section 104.39, F.S. 1951, F.S. A; anti-trust laws, Section 11, Chapter 6933, Acts of 1915, now Section 542.11, F.S. 1951, F.S.A.; insurance law violations, Section 3, Chapter 6849, Acts of 1915, now Section 635.08, F.S. 1951, F.S.A.