75 So.2d 211 (1954)
James BOYNTON et al., Appellant,
v.
STATE of Florida ex rel. Glenn C. MINCER, as State Attorney, and John D. Marsh, as Assistant State Attorney, Appellees.
Supreme Court of Florida. En Banc.
October 22, 1954.
*212 James S. Rainwater and O.B. White and E.S. Corlett, Miami, for appellants.
Richard W. Ervin, Atty. Gen., and Mark R. Hawes, Gainesville, for appellee.
TERRELL, Justice.
This suit was instituted by the State under Section 64.11, Florida Statutes 1951, F.S.A. to enjoin a nuisance. The complaint charges that James Boynton is the principal and the other defendants are his agents or employees and that they engaged in the business of operating a lottery and bookmaking business contrary to Section 823.05, F.S.A. A motion to dismiss the complaint was overruled, an answer was filed in which defendants declined response to the material allegations of the complaint, including interrogatories propounded by the State, on the ground that it might tend to incriminate them in the State and Federal Courts. A hearing was had on bill and answer resulting in an order restraining defendants from the use of described property in Dade County for the purpose of promulgating, printing or selling lottery tickets or in setting up and having in their possession gambling devices which would aid in any unlawful conspiracy to which they were parties. We are confronted with an appeal from this decree.
The point for determination is whether or not the trial court committed error in entering the permanent injunction against defendants and in abating certain gambling nuisances at specified addresses in Dade County.
Section 823.05, F.S.A., enumerates the places that may be abated as nuisances under Section 64.11, Florida Statutes 1951, F.S.A. Included in the list is any "building, booth, tent or place which tends to annoy the community * * * or become manifestly injurious to the morals or manners of the people * * * or shall be frequented by the class of persons mentioned in § 856.02, or any * * * place or building where games of chance are engaged in in violation of law or any place where any law of the State of Florida is violated, shall be deemed guilty of maintaining a nuisance" and shall be so declared.
It is not denied that Boynton and other named defendants had purchased and were in possession of a Federal gambling stamp. The business addresses of the purchasers were listed and correspond to the premises described in the complaint. It is also shown that each defendant paid the price exacted to secure the stamp and as required by *213 Federal law all of the defendants have paid ten percent of their gross gambling income to the Federal government. The State admits that the gambling stamps were required only for conducting lotteries and bookmaking operations.
Relying on the fact that defendants purchased Federal gambling stamps, listed the places where they propose to conduct gambling activities, and paid the excise tax required by Section 3285, Internal Revenue Code, 26 U.S.C.A., the State contends that defendants and each of them are engaged in the lottery and bookmaking operations which the statute declares to be a nuisance. In response to the State's contention, defendants interpose the defense of self-incrimination guaranteed by the Fifth Amendment to the United States Constitution and Section 12, Declaration of Rights, Florida Constitution, F.S.A. They interposed the same defense for refusal to answer interrogatories interposed by the State.
The State meets this defense head on with the postulate that it dissolves under the immunity statute, Section 932.29, Florida Statutes 1951, F.S.A., as follows:
"No person shall be excused from attending and testifying, or producing any book, paper or other document before any court upon any investigation, proceeding or trial, for a violation of any of the statutes of this state against bribery, burglary, larceny, gaming or gambling, or of any of the statutes against the illegal sale of spirituous, vinous or malt liquors, upon the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to convict him of a crime or to subject him to a penalty or forfeiture, but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may so testify or produce evidence, documentary or otherwise, and no testimony so given or produced shall be received against him upon any criminal investigation or proceeding."
Supporting its contention that the immunity statute relieves defendants from prosecution, the State says that every allegation in the complaint went to the gambling activities of appellants, that they were required to answer these allegations, that Equity Rule 34, 31 F.S.A., requires them to admit or deny each charge in the complaint and had they done so they would have been granted immunity from prosecution. The State also contends that their failure to deny the charges amounted in law to a direct admission of them and when admitted they were proof sufficient to support the court's decree. A thorough discussion of the quoted immunity statute as to witness before a grand jury may be found in State ex rel. Mitchell v. Kelly, Fla., 71 So.2d 887.
The protection against self-incrimination guaranteed by the Declaration of Rights is applicable to any evidence, documentary or oral, that tends to convict one of crime or subject him to penalty or forfeiture; whether the prosecution, penalty or forfeiture involves a civil or criminal act is not material. Florida State Board of Architecture v. Seymoure, Fla., 62 So.2d 1. Then if defendants plead self-incrimination and the Court grants immunity could it then adjudicate the place to be a nuisance and abate it? The statute is not explicit as to how a gambling nuisance should be abated, but it is generally done by padlock, sale or confiscation of the property. In whatever way done, it would amount to a penalty imposed on defendants despite the fact that they are entitled to the privileges of the immunity statute.
Account of the fact that the gambling tax invades a field thought by some to be accorded the States, it raises questions not heretofore adjudicated. If the State can accomplish what it proposes by the immunity statute, defendants have by their bargain with the State turned state's evidence or admitted themselves into the penitentiary. If this be the result, should not the State be estopped from prosecuting them for operating a gambling house? Wilson v. State, 134 Fla. 390, 184 So. 31. By the same token if defendants may be *214 said to have admitted operating a gambling house is not the State foreclosed to punish them for such a charge or to push any proceeding resulting in a penalty or forfeiture? Wilson v. State, supra; State ex rel. Mitchell v. Kelly, Fla., 71 So.2d 887; Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746; Feldman v. United States, 322 U.S. 487, 64 S.Ct. 1082, 88 L.Ed. 1408; McCarthy v. Arndstein, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158; Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819, may be construed as giving an affirmative answer to this question.
In State v. Kelly, supra [71 So.2d 887], we held that "when the witness gives testimony responsive to questions which are relevant to such subject matter, the witness is free forever from being subjected to a penalty, forfeiture or prosecution for any offense substantially connected with the transaction, matter or thing concerning which he testified if any testimony so given in such inquiry constitutes a link in the chain of evidence needed to prosecute such witness thereafter charged for such offense revealed by testimony he was required to give, whether such testimony is used or not."
The constitutional validity of the 10% excise gambling tax does not appear to have been passed on by the Supreme Court of the United States, but in United States v. Kahringer, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754, the Federal gambling stamp was approved and held not in violation of the privilege against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution. In the Federal Court one cannot plead self-incrimination for the reason that his testimony may be used to incriminate him in the State Court. State v. Kelly, supra, and United States v. Murdock, 284 U.S. 141, 52 S.Ct. 63, 76 L.Ed. 210. By the logic of these cases and the majority reasoning in United States v. Kahringer, supra, it may well be that if defendants admit payment of the excise gambling tax they would sacrifice the right of self-incrimination under the Fifth Amendment, United States Constitution. United States v. Di Carlo, D.C., 102 F. Supp. 597; Note 66 Harvard Law Review 186.
In Clark v. State, 68 Fla. 433, 67 So. 135, 136, this Court held that testimony given by defendant in a Federal Bankruptcy proceeding could not be used in a later criminal proceeding in the State. "To permit the introduction of such proffered testimony would be violative of the provition of section 12, Declaration of Rights in our state Constitution in compelling, indirectly at least, the defendant in a criminal case to be a witness against himself. See Daniels v. State, 57 Fla. 1, 48 So. 747." The evidence in the Clark case was secured in a bankruptcy proceeding, the bankruptcy act providing that no testimony given by a witness could be used in any criminal proceeding against him. A restriction applied to Federal Courts only, but in the recent United States Supreme Court case of Adams v. State of Maryland, 1954, 347 U.S. 179, 74 S.Ct. 442, a similar restriction was imposed on evidence taken by Senate investigation committee as to criminal trials in a state court. A reasonable deduction from Adams v. Maryland and United States v. Kahringer, supra, is that an act of Congress may control the State's application of evidence given before an investigation committee hearing, a federal administrative agency or before a Federal Court. Section 3297, 26 U.S.C.A., gambling tax law, provides that payment of the tax shall not exempt any person from criminal penalties for violation of state or federal law against gambling.
If payment of the 10 percent excise tax for the privilege of gambling is to be treated as a confession, it is condemned by McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819. The McNabb case has to do largely with physical factors involved in securing a confession, but where law exacts the confession the same rule must apply. In Rodriguez v. Culbreath, Fla., 66 So.2d 58, this Court held that the possession of a gambling stamp was not sufficient to show that the holder was a common gambler or vagrant. Neither would such possession be sufficient *215 to show that the holder was operating a public nuisance at the address shown in the application for the stamp. This necessarily follows from the doctrine announced in Kahringer v. United States, supra, in that the application for the stamp relates to "future" operation which may not be conducted. The excise tax exacted becomes due after the purchaser has engaged in gambling. He is compelled to pay it; if he is then forced to admit it, he has no protection against self-incrimination.
We do not consider it necessary to labor the contention that merely engaging in gambling and no more is sufficient in itself to abate the place as a nuisance under the statute, F.S. § 823.05, F.S.A. In Pompano Horse Club v. State, 93 Fla. 415, 111 So. 801, 52 A.L.R. 51, the Court held in effect that the legislature answered the question, and that what the individual thinks is not material. In other words, under the terms of the act, Section 823.05, F.S.A., when the purchaser procures his stamp and pays the excise tax for the purpose of gambling at a stated address, the point is concluded.
In this case it does not appear who the owners of the lands in question are. That fact may become important. The theory of the statute is that property owners are duty bound not to use their property for illegal purposes. Nuisance cases like this are usually directed to the landowner but since the fact of ownership does not appear in this case, we express no opinion as to the effect of the judgment on landowners who are not before the Court, if there should be such. The pleadings should indicate the owners.
In the pages immediately preceding this, we have detailed some of the facts and cases that make the answer to the question presented difficult. Another factor which gives us trouble is the fact that the answer to the question is concerned with two sovereignties operating in the same territory, both of which have similar constitutional guarantees against self-incrimination. Most of the subordinate sovereignties have immunity statutes similar to Section 932.29, Florida Statutes 1951, F.S.A., and there are now pending before the Congress a half dozen proposed acts to clothe the Federal Government with something in the nature of an immunity law. In addition there is the Internal Security Law generally known as the McCarran Act which may have an important influence in the interpretation of some aspects of self-incrimination which is often so complicated that the judge as well as the victim and the witnesses are confused as to its application. It does not exist if the offense was committed in another jurisdiction; there must be privilege to activate immunity, and the circumstances of the case generally determine its application. Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118.
Since two sovereignties with substantially the same guaranty against self-incrimination are involved and the superior sovereignty enacted the law that gives rise to this litigation (gambling stamp act) the Federal question is the one that first presses for adjudication. This question is complicated by the fact that the Federal cases cited herein give us no dependable guide for determination of the question. Some of them indicate that in the Federal Court one cannot plead self-incrimination on the ground that his testimony may be used to incriminate him in the State Court, while others convey the opposite impression. There being a dearth of Federal adjudication on the point apperception which often aids materially gives us no help here. Indeed the Federal Act with which we are confronted makes a sortie into a field to capture taxes that we thought the Tenth Amendment of the United States Constitution had reserved to the States. In search of an answer we are reminded of Sir Winston Churchill's quip about the behavior of one of his neighbors: a riddle wrapped in a mystery inside an enigma.
In the May 1954 issue, American Bar Journal, Dean E.N. Griswold of the Harvard Law School points out that the privilege against self-incrimination is one of the great landmarks in man's struggle to make himself civilized. It is the handmaid of the abolition of torture and has its *216 roots deep in twelfth century legal thinking. Its fundamental thesis is that you cannot extract evidence from one charged with a crime on which to convict him. It is contrary to every principle of legal philosophy to coerce one to reveal his guilt. In Brown v. Walker heretofore cited, the Court pointed out that the rule against self-incrimination is the result of a long struggle between the opposing forces of the spirit of individual liberty on the one hand and the collective power of the State on the other. Most of the law on the question eminates from the criminal side of the docket but if experience teaches anything it teaches that reckless grants of immunity are reflected in the civil docket, that illogical and thoughtless grants of immunity aid the state and work to the disadvantage of the victim, and lastly that immunity provided by Federal law does not prevent prosecution for the same offense in the State.
Despite the anomalous situation the Federal and State law on the question has produced, neither can deprive the owner of a gambling stamp the right to claim the immunity from self-incrimination granted him by the Bill of Rights in both constitutions, yet that is what the State proposes to do. It cannot be disputed that both sovereignties are in the gambling business; they grant a privilege for that purpose, take a "cut" of the gambler's "take", and, in this case, the State proposes to use the evidence of the gambler's right to exploit his trade which he was required to file with the Internal Revenue Department on which to convict him. The gambler has the same right to invoke the protection of the Bill of Rights that the Communist, the lawyer, the teacher and the preacher has, but it is contrary to every principle of fair play and sportsmanship for the sovereignty to exact a "cut" from the gambler's "take" and then use the evidence he is required to file with which to entrap and convict him.
For these reasons and others which I have not explored I do not think the State can ground its case on the mere fact that defendants have purchased a gambling stamp and paid the excise tax shown, so the judgment must be and is hereby reversed.
Reversed.
ROBERTS, C.J., and MATHEWS and HOBSON, JJ., concur.
THOMAS and DREW, JJ., Agree to judgment.
SEBRING, J., not participating.