Samuel H. Hofstadter, J.
The petitioner moves to quash a subpoena for his appearance to give testimony before the Commission of Investigation of the State of New York on the ground *354 that he was immune from service at the time the subpoena was served upon him. This is another facet of the now notorious meeting at the home of Joseph Barbara in Apalachin, New York, on November 14,1957. The petitioner, a resident of New Jersey, was indicted for conspiracy in the United States District Court for the Southern District of New York on May 13, 1959, and a warrant for his arrest was issued on the same day. The indictment remained sealed until May 21, 1959, on which date the petitioner was arrested and taken into custody in New Jersey by agents of the Federal Government acting under the warrant for his arrest. The petitioner was brought before a United States District Judge in Newark, sitting as a United States Commissioner, who fixed bail and directed the petitioner to appear the following day, May 22, 1959, before the District Court for the Southern District of New York. The petitioner on May 21, 1959 submitted to the District Court for the District of New Jersey an appearance bond and as directed appeared before the District Court for the Southern District of New York on May 22, 1959, to answer the indictment. He was there arraigned, bail was fixed and furnished by the petitioner and he was released pending trial. On December 18, .1959 the petitioner with others was found guilty by jury verdict and, following the verdict as he left the United States Courthouse in this district was served with the subpoena here in question.
The petitioner urges that his appearance in this jurisdiction under the circumstances stated was voluntary and rendered him immune from service of civil process, which the subpoena admittedly is, until a reasonable time after the termination of the trial which resulted in his conviction. His position in final analysis is that since he submitted to arrest without resistance and obeyed the order to appear before the District Court for the Southern District of New York he came into this jurisdiction voluntarily. In my opinion this contention is without substance; he entered the jurisdiction under the compulsion of the warrant and the proceedings taken thereunder. There is no need for extended discussion of the applicable law, in view of the opinion just rendered by my colleague Mr. Justice Chimera, in upholding a like subpoena in the case of another of the convicted attendants at the Apalachin meeting. On a review of the authorities Mr. Justice Chimera held the appearance in this jurisdiction was not voluntary and, therefore, there was no immunity from civil process; the case is not distinguishable from the one before me (Matter of Scalish v. Commission of Investigation, N. Y. L. J., Jan. 11,1960, p. 14).
*355 Prof. Wigmore tells us: “ For more than three centuries it has now been recognized as a fundamental maxim that the public (in the words sanctioned by Lord Hardwicke) has a right to every man’s evidence * * * any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule * * * From the point of view of the duty here predicated, it emphasizes the sacrifice which is due from every member of the community * * * This contribution is not to be regarded as a gratuity, or a courtesy, or an ill-requited favor. It is a duty, not to be grudged or evaded * * * He who will live by society must let society live by him, when it requires to * * * From the point of view of society’s right to -our testimony, it is to be remembered that the demand comes, not from any one person or set of persons, but from the community as a whole, — from justice as an institution, and from law and order as indispensable elements of civilized life.” (8 Wigmore, Evidence, § 2192, pp. 64-66; see, also, 70 0. J., Witnesses, 717-718 and quotation from Crosby v. Potts, 8 Ga. App. 463, 464--166.)
It is only when speech is self-incriminatory that it may be withheld. But we do not reach that question here; in the present posture of the matter, it is not pertinent now. The only question before the court is the service of the subpoena — whether the petitioner was immune from it being lawfully served upon him. If he was not, he must respond to it. Then, if so advised, he can claim the privilege against self-incrimination to questions as propounded. In turn the respondent could confer immunity on the petitioner or desist from examining him as to matters claimed to be self-incriminating. If the respondent persists, having conferred immunity, the petitioner would be required to answer.
For, when the State has granted him a full pardon, it may not be denied his evidence. When he no longer needs the shield of constitutional privilege to protect himself from criminal prosecution, he may not use it to block legislative inquiry (Brown v. Walker, 161 U. S. 591; Matter of Doyle, 257 N. Y. 244; Ullmann v. United States, 350 U. S. 422). In the give and take of our society, these are the ultimate guide lines: No man may be forced to help convict himself of crime. But when fully freed of potential danger, the community may call upon him to speak.
It is no erosion of the privilege to exchange amnesty for information. If there be need for the light a witness can shed, in the absence of risk of prosecution, his duty as a citizen calls for his giving it. When Judge Holmes said: “ The most stringent *356 protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic” (Schenck v. United States, 249 U. S. 47, 52), he was speaking in limitation and not preclusion. The obverse bears equal weight. There may be a clear and pressing duty to shout “ Fire! ” if there is, in fact, danger — especially when the proclamation is not fraught with danger to the person making it.
The petitioner argues further that the long-established rule in this State which denies immunity to a nonresident who enters the State under compulsion of law should be abandoned in favor of the contrary rule in the Federal courts on the basis of comity. Our Appellate Division, however, refused to follow the Federal rule in a case in which the United States District Court had sustained the claim of immunity (Dwelle v. Allen, 151 App. Div. 717); if so radical a departure from recognized precedent is to be adopted, it may not be done at Special Term.
The motion to quash the subpoena is accordingly denied and the stay vacated.